194 So.2d 856

Thomas **FOY**

v.

**STATE.**

I Div. 132.

Court of Appeals of Alabama.
Nov. 29, 1966.
Rehearing Denied Dec. 20, 1966.

Matranga, Hess & Sullivan, Mobile, for appellant.

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

Appellant was indicted for burglary in the second degree by the Grand Jury of Clarke County, Alabama. Upon arraignment in open court, appellant, accompanied by his attorney, entered a plea of not guilty. Upon trial by jury, appellant was found guilty as charged and sentenced to six years imprisonment in the State penitentiary. A motion for a new trial was denied. Appellant now appeals from the judgment of guilty and the overruling of his motion for a new trial.

The State's first witness was W. W. Andrews who testified that he was a merchant in Jackson, Clarke County, Alabama, and that in his building located there in the name of the W. W. Andrews Supply Co., a corporation, he kept all kinds of lumber, house furnishings, paint, and building materials. He testified that he was president of the corporation and that he kept his money in a vault in the building until he could deposit it in the bank. He further testified that on the night of June 28, 1964, he received a phone call from a police sergeant and that he met the sergeant at the store and found that a "time lock" had been broken and was lying on the floor. Upon entering the building, they saw a hole in the vault and brick and mortar lying on the floor, on top of which lay a welding out-

fit. Andrews stated that he looked in the vault and found that the cash box was missing and he testified that this box contained approximately $17,300.00.

Andrews further testified that he closed the store at 5:30 that Saturday afternoon and left the store in order and that it was about ten minutes until four in the morning on Sunday when they arrived and found the door broken open; that he was mayor of the City of Jackson at the time of the burglary and had been mayor for seventeen years; and that he knew the appellant and knew that appellant had at one time worked for the City of Jackson.

The State's next witness was Police Officer Wade Henson of Jackson who testified that on the night of June 28, 1964, at about ten o'clock he and his partner, Mr. Easterling, were riding in their police car and observed appellant whom the witness had known for several years and who had also worked for the police department. Officer Henson also stated that he went off duty around one o'clock in the morning and that appellant was still in the police car with his partner, and they observed appellant riding over the City of Jackson during this time and that the appellant passed by the location of the W. W. Andrews Supply Company.

The State's third witness was one Charles Lawley who was presently serving two years in the county jail who testified that he had five burglary convictions, including the present one, and that he had known appellant for about three years prior to June 28, 1964. He stated that he had first seen appellant at the home of Jack Lovell in Prichard, Alabama, at eleven o'clock on Saturday morning, June 28, 1964, and that in addition to appellant and Jack Lovell, Johnny Taylor and himself and Annie Mae Stanley were there. He testified that here the plans were made for all of the parties to leave and drive to Jackson in Lovell's car and that they took with them a sledge hammer, crowbar, acetylene tank and torches, leaving Prichard about 3:30 in the afternoon and driving north to Jackson. He said that they got stuck in a mud hole for about two hours; that they then crossed the bridge and saw appellant later that night walking toward the bridge. He stated that they had to use a police car to pull appellants' car out of the mud hole and that they, in the police car and in their own, drove back into Jackson, leaving Lovell's car near the bridge and using appellant's car to take the tools to the W. W. Andrews Supply Company. He further testified that they used a crowbar to "jimmy" the back door, went in and took the acetylene tank and the rest of the tools. The witness stated that he, Johnny Taylor, and Jack Lovell took turns working the brick loose and went into the vault from the side and that it took four to five hours to break through this concrete wall and three or four layers of brick. He further stated that they took the cash box containing $16,000.00 and went back to and got in appellant's car which was parked in front of the store, drove toward the bridge and got into Jack Lovell's car and went back toward Mobile to the home of Jack Lovell where they were joined by appellant and where they divided the money and that each got $2,900.00. The witness stated that appellant received his share and picked up a share for a policeman named Rudy.

The State's next witness was John Taylor who stated that he had been advised concerning his constitutional rights by his attorney and by the trial court. He said substantially what the preceeding witness had said, corroborating the story of the burglary and the division of the money.

Sheriff Hybard Paul, the State's next witness, testified that he had been Sheriff of Clarke County for three years and was Sheriff on June 28, 1964, and that he had known appellant when he had occasion to work with him and when he was a policeman for the City of Jackson. Sheriff Paul stated that he picked up a warrant for appellant's arrest in the inferior court of Clarke County on August 29, 1964, and that he and Deputy Tom Dees arrested ap-

pellant who came with them willingly to the Clarke County jail from Mobile, arriving about ten or eleven o'clock that night. He said that they did not handcuff appellant and that he was permitted to use the telephone. He said that after appellant had been advised of the nature of the charges against him, he talked freely though he had been advised of his absolute right to remain silent and that any statement made by him could be used in evidence against him.

Sheriff Paul testified further that appellant was told that he had a right to counsel and that he could use the telephone to call anyone he desired. He said that appellant, with no promise or hope of reward and with no threats to induce him to talk, admitted his participation in the burglary and was taken the next morning before a magistrate and asked that bond be set and waived preliminary, and bond was set at $2,500.00. The witness stated that appellant had cried and said that he was sorry to bring this on his family and hoped that he could get probation.

Next, appellant took the stand on voir dire in his own behalf and contradicted the testimony of Sheriff Paul by saying that he was kept in a cell, was not advised of his right to counsel, nor was he cautioned that any statement made could be used against him, nor was he offerred an opportunity to use the telephone.

On cross-examination, appellant admitted that he went into the house where his wife was and told her that he was going to Clarke County and that they had a warrant for his arrest and he later admitted telephoning his brother concerning his bail.

Appellant's next witness was his brother, Jerry Foy, who told of receiving a telephone call from the Sheriff's office in Clarke County and he said that he attempted to call appellant earlier that day but was told by an unfamiliar voice that he could not speak with him.

Next the State recalled Sheriff Paul who testified that appellant had not been denied an opportunity to use the telephone or to talk with his brother, nor had there been any call to the appellant prior to his placing the call to his brother. The Sheriff then identified Deputies Knight and Tarleton who were on duty and present when appellant was brought to the jail.

Deputy Tarleton, the next witness, identified the Sheriff and the deputies present at the time appellant was brought to the jail. Deputy Knight then testified that he was present when appellant was brought in and that he was not handcuffed and that he was advised that he could use the telephone to call a lawyer and that he could remain silent.

On voir dire re-examination by Mr. Gilmore, Deputy Knight testified as follows:

"12:05—Noon recess until 1:30 P.M. when proceedings were resumed. The jury again took their places and the regular trial proceeded. The court reporter read the last question propounded to Mr. Paul on direct examination by Mr. Gilmore before the Voir Dire examination started:

"REPORTER: 'What statement did he make to you about his participation in the burglary of W. W. Andrews Supply'?"

"A. He said that he was in on it and that he got a cut of the money; that is what it was in substance.

"Q. Did he name the other parties involved with him?

"A. He named Mrs. Stanley, Charles Lawley, John Taylor and Jack Lovell, and I asked him, you know, if there was anybody else in it or knew about it, and he said he couldn't tell me at that time. He said he just couldn't tell me.

"Q. Did you say I was present part of that day during the time he told you?

"A. Yes, sir. You wasn't present to begin with.

"Q. Later, did I come in the office?

"A. Yes, sir.

"Q. What conversation was had at that time and place? First, I will ask you did anyone threaten him or offer him any reward or hope of reward to get him to talk while I was in the office?

"A. No, sir.

"Q. Was that after his arrest on the following day?

"A. Yes, sir.

"Q. What statement was made?

"MR. HESS: I object. It is irrelevant, incompetent and immaterial and object on the ground it was made in deprivation of defendant's rights under the Constitution of the United States of America.

"JUDGE LINDSEY: Did you question him as to the time?

"MR. GILMORE: I will.

"Q. Who was present when I was in the office?

"A. Me and you and Mr. Foy.

"Q. What time was it?

"A. The best I remember about 10:00 o'clock.

"JUDGE LINDSEY: Was it the next morning after he was arrested?

"A. Yes, sir.

"JUDGE LINDSEY: I overrule the objection.

"MR. HESS: We except.

"Q. What statement did he make relative to the burglary of W. W. Andrews Supply?

"A. He said he was hot with Mr. Andrews about getting fired and that was the only way he knew to get back at him he knew about, and he got a cut of the money.

"Q. Did he say what he did with his money?

"A. Best I remember he said he went to Chicago or somewhere and bought some cars.

"MR. GILMORE: That's all."

Next the oral statement and circumstances concerning the appellant's involvement in the robbery were admitted in evidence.

Appellant again took the stand and admitted that he was a former police officer in Jackson; that he was riding with Deputies Henson and Easterling on the night in question; and denied having any knowledge of the W. W. Andrews Supply Co. burglary and stated that he did not notice anything improper at the store. He testified that he had ridden down the river bridge that night to help a patrol car which had gotten "bogged down". He denied making the oral inculpatory statement to the sheriff.

Next appellant presented several witnesses who testified to his good reputation for honesty and stated that he was a member of the Catholic Church.

Appellant contends that the trial court should have disqualified a member of the jury who stated that he had an opinion that the crime charged in the indictment was in fact committed and who did not state unequivocally that he could lay aside such previously formed opinion and find a verdict on the evidence alone.

Counsel for appellant requested that the jury be asked if any of them had an opinion as to whether or not there was a burglary of the W. W. Andrews Supply Co. on the night in question and Juror William Penn Hall stated, "I believe there was Judge. I read it in the paper." Then Juror Sidney Robinson McCorquodale stated, "That same thing applies to me," and Juror William Waite McCorquodale stated, "I believe there was a burglary." The trial judge then asked each of these jurors separately if they could give the case a fair and impartial trial if they were accepted and two answered in the affirmative and the third said, "Yes, sir, I think so." Each of these jurors was challenged for cause

by appellant and the trial judge denied the challenge and appellant excepted to this ruling of the court.

Appellant contends that the reply of Juror Sidney Robinson McCorquodale, "Yes, sir, I think so" was not unequivocal, unqualified or distinct and that the trial court erred in not disqualifying him.

We feel that the record clearly shows that the three challenged jurors who admitted having seen statements in the local newspapers that there had been a burglary, all stated that they could render a true and impartial verdict and were, therefore, properly qualified as jurors.

In Willingham v. State, 262 Ala. 550, 80 So.2d 280, the following occurred:

"Wallace [a juror] had heard the case discussed and informed the court that if what he had heard discussed about the case was corroborated it 'might have some effect' on his verdict. On further examination he stated in answer to the question whether he would go by the evidence from the witness stand in arriving at his verdict, 'I'll do my best, but I have heard a lot of things in regard to it. Of course, if they were corroborated on the witness stand.' Later after having been asked several questions by the court as to the effect of what he had heard would have on the verdict he would render, he was then asked by the court, ' * * * is it your opinion that you could render a verdict according to the evidence, whatever evidence is brought from the witness stand?' The juror replied, 'I think so, yes sir.' The court then asked, 'That's your best judgment that you would do that?' His answer was, 'Yes sir.' The court refused to disqualify the juror and this ruling did not constitute reversible error."

The opinion continues as follows:

"The answers of the juror Wallace do not disclose that he had a fixed opinion which would bias his verdict but he stated plainly that he could render a verdict according to the evidence."

The basis of the disqualification of a juror must be that he had a fixed opinion as to the guilt of the accused. The mere statement that the juror had information that the corpus delicti existed is not sufficient to disqualify him. The trial judge was only asked to inquire as to whether the venire had a belief that a burglary had happened, not as to who was the criminal agent. Therefore, we feel that there was no error in this regard in the case at bar.

We feel also that the trial judge was correct in denying the application for a new trial on the insufficiency of the evidence and that the verdict was not contrary to the evidence. The evidence revealed that the appellant scouted the scene as a police officer and that he received a share of the money for himself and another, purportedly for a fellow officer. Since there was a conflict in the evidence, it was a question for the trial jury to decide.

We observe that the arguments of counsel for the appellant, both in brief and orally, were addressed largely to possible reversible error by the trial judge in empanelling the jury for the trial of this cause as appears on pages 6, 7 and 8 of the record. We have not only carefully considered these matters but, in addition thereto, have considered all questions apparent on the record as provided by Sec. 389, Tit. 15, Code of Alabama, 1940.

This cause is due to be and the same is hereby

Affirmed.