The defendant was charged in two indictments with two separate offenses of selling marijuana in violation of the Alabama Uniform Controlled Substances Act. Alabama Code Section20-2-70 (1975). He was convicted in each case. Sentence in case number CC-81-064 was ten years' imprisonment and a $25,000 fine. Sentence in case number CC-81-065 was fifteen years' imprisonment.
 I
In case number CC-81-064, the defendant was charged with the sale of marijuana to James E. Weiland on June 10, 1981, "while at or near 13th Street N.W. in Fayette, Alabama." Two issues are raised on the appeal of that conviction.
 A
It was not error for the trial judge to allow the prosecutor to read the names of other criminal defendants, indicted for drug offenses, from the weekly circuit court docket while qualifying the venire on voir dire. The defendant argues that the prosecutor's use of the docket sheet containing the names of those charged with drug offenses arising out of a three month long drug investigation was prejudicial because it advocated guilt by association.
"(P)arties have the right, within the trial court's sound discretion, to examine jurors on any matter that might tend to affect their verdict." Ex parte Ledbetter, 404 So.2d 731, 732
(Ala. 1981). "We will not overturn the trial court's decision on appeal so long as the voir dire conducted by the trial court is capable of giving `reasonable assurance that prejudice would be discovered if present.' United States v. Delval,600 F.2d 1098, 1102 (5th Cir. 1979)." United States v. Brooks,670 F.2d 148, 152 (11th Cir. 1982).
This issue was also raised in the defendant's second case (CC-81-065). There the trial judge stated his reasons for allowing the question:
 "It's very obvious that the reason for asking the question is that some of these people could be related to these people or have knowledge or know them or discussed the case with them and in some way relate that to Mr. Tucker. They were publicized together as being arrested.
 "You've had the opportunity to determine if this publicity has, in any way, effected this jury and they have all answered that it did not. The State has the opportunity, just as the defendant does, to inquire into things that might adversely influence the opinion to the State.
 "The Court can adversely see where association of some of these other people might do this and the District Attorney was instructed by the Court, and I think he took precautions, not to, in any way, connect these individuals with this case or taint this case."
We find no abuse of the discretion of the trial judge. SeeLuttrell v. State, 357 So.2d 1018, 1019-20 (Ala.Cr.App. 1978) (State properly allowed to inquire if any prospective juror distrusted narcotics agents); Slinker v. State, 342 So.2d 44,48 (Ala.Cr.App. 1977) (State properly allowed to inquire whether any member of venire had ever been a witness against the State).
 B
The defendant strenuously argues that the trial judge erred in allowing the State to introduce testimony of other criminal conduct of the defendant to rebut a defense of entrapment. We find that such evidence was properly admitted.
The defense in this case was somewhat unique in that the defendant presented an alibi for the particular date in the indictment and maintained that he never even saw Weiland, the undercover agent, on that day. However, the defendant testified that agents had tried to entrap him into the sale of drugs at other places on other occasions.
The record supports the finding of the trial judge that the defense was that "they (the undercover agents) were constantly around badgering him, soliciting, trying to *Page 1168 
make him sell them marijuana to the point where they were a nuisance and that he refused. He never engaged in any business with them except on this one occasion (on a date other than that charged in the indictment) when he sold them washing powders." The trial judge also found that the evidence of entrapment was "strong . . . all through the record" and that the defendant was "trying to have the best of both" defenses of alibi and entrapment.
The trial judge ruled that it would not be fair to the State to exclude the evidence of other offenses. He found that it would be "grossly unfair" and "would work manifest injustice into the case and the State would be cut off from * * * defending and refuting this very obvious defense that has been injected either directly or by inference in this case." Under the facts and circumstances of this particular case, the ruling of the trial judge was correct and the evidence that the defendant sold drugs on other occasions was properly admitted to rebut the evidence of entrapment despite the fact that the defendant did not claim that he was entrapped as to the particular and specific crime charged.
Moreover, regardless of whether or not the evidence of other offenses was admissible to rebut any defense of entrapment, it was clearly admissible to prove identity, Thomas v. State,409 So.2d 955 (Ala.Cr.App. 1981); C. Gamble, McElroy's AlabamaEvidence, Section 69.01 (8) (3rd ed. 1977), and to prove that both the now charged crime and the other offenses "were committed in keeping with or pursuant to a single plan, design, scheme or system." McElroy's Section 69.01 (6); Annot., 93 A.L.R.2d 1097 (1964). "If the ruling of the trial court is correct for any reason, it will not be reversed." Collier v.State, 413 So.2d 396, 403 (Ala.Cr.App. 1981), affirmed, Exparte Collier, 413 So.2d 403 (Ala. 1982).
 II
In case number CC-81-065, the defendant presents five issues for review.
 A
The defendant's motion to quash the indictment was properly denied for a number of reasons.
The indictment, in pertinent part, charged that the defendant "did on to-wit: June 16, 1981, while behind the City Exxon Service Station in Fayette, . . . sell . . . marijuana to James E. Weiland." The number "6" in the date had been written over in pen resulting in a number that appeared to be "8".
The district attorney explained this confusion.
 "(T)he alleged date has been discussed with the defense counsel on several occasions. The background of the six and the eight is that the indictment was originally typed before the Grand Jury met to read the eighteenth.
 "When the testimony before the Grand Jury was such that the specific date was the sixteenth, I corrected that in pen and the date that we charge is the sixteenth, which is what the Grand Jury intended."
The trial judge denied the motion to quash after finding that defense counsel had been present with the defendant at arraignment and had made no objection to the indictment. The judge also found that the defendant was, in fact, aware of the correct date: "The Court would acknowledge that the date, as it appears on the indictment, is not clear, but that the fact has been known to the defendant for some time now and, apparently, the defendant has been made aware of the correct date."
The defendant first objected to the indictment by his motion to quash which was made orally immediately before trial. The defendant was arraigned and pled not guilty. He did not request any extended time for filing any special pleas or motions after arraignment.
Unless a defect in the indictment is associated with an essential element of the offense which leaves the accused unaware of the nature and cause of the charge against him, a demurrer, not a motion to quash, is "the normal procedure to raise *Page 1169 
defects going to the validity of the indictment." Andrews v.State, 344 So.2d 533, 534 (Ala.Cr.App.), cert. denied,344 So.2d 538 (Ala. 1977). "An `oral demurrer' is by nature a defective procedure that would not under usual circumstances preserve for our review the issue concerning the validity of the indictment." Johnson v. State, 405 So.2d 149, 152
(Ala.Cr.App. 1981).
Generally, both a demurrer and a motion to quash must be filed before a plea to the merits of the indictment since a plea to the merits admits the validity of the indictment.Pinkard v. State, 405 So.2d 411, 413 (Ala.Cr.App. 1981);Stemple v. State, 352 So.2d 33, 35 (Ala.Cr.App. 1977). See also Alabama Code Section 15-15-41 (1975).
Although fatal defects in an indictment cannot be waived,Barbee v. State, 417 So.2d 611, 613 (Ala.Cr.App. 1982), time is not always an essential or material element of the offense of selling marijuana. An indictment charging the sale of marijuana is not fatally defective for failing to state the date of the alleged offense. Boswell v. State, 290 Ala. 349, 355,276 So.2d 592 (1973). Here, the indictment properly charged that the offense was committed "before the findings of this indictment." This was all that was required by Alabama Code Section 15-8-30
(1975).
For all these reasons, but most importantly because the defendant was actually aware of the date of the alleged offense, the trial judge properly denied the motion to quash the indictment.
 B
After his motion to quash was denied, the defendant requested a continuance on the ground that there had been "(n)ot publication, as such, but conversation in the community about his previous trial and conviction for selling marijuana" (CC-81-064). That previous trial began on Tuesday, September 22nd and concluded the following day. The defendant's trial in case number CC-81-065 began five days later, on September the 28th, and ended the following day. The defendant did not request a change of venue. Alabama Code Section 15-2-20 (1975).
Mere "conversation in the community" about an earlier conviction does not constitute ground for granting a continuance.
The decision to grant or deny any continuance rests within the discretion of the trial judge. Ungar v. Sarafite,376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964). A defendant appealing the denial of a continuance must demonstrate a clear abuse of the trial judge's discretion and make a specific showing of prejudice. Ungar, supra; Beauregard v. State,372 So.2d 37, 43 (Ala.Cr.App.), cert. denied, Ex parte Beauregard,372 So.2d 44 (Ala. 1979). This Court must determine whether or not there has been an abuse of discretion in light of the circumstances of each case, looking particularly to those reasons the defendant presented to the trial judge. Ungar,376 U.S. at 589, 84 S.Ct. at 849.
The record contains no evidence of inherently prejudicial publicity which had so saturated the community as to have a probable impact upon the prospective jurors. Dolvin v. State,391 So.2d 666, 674 (Ala.Cr.App. 1979), affirmed, Ex parteDolvin, 391 So.2d 677 (Ala. 1980). There is absolutely no evidence of any actual prejudice to the defendant resulting from any pretrial publicity. In fact, the record contains no evidence of the degree or extensiveness of the "conversation in the community." Without proof of prejudice this Court will not find that the trial court abused its discretion in failing to grant a continuance. Dolvin, 391 So.2d at 674.
Contrary to the defendant's allegations, the record shows that he was not prejudiced by any pretrial publicity. On voir dire, the defendant challenged three jurors for cause because they "specifically remembered reading about last week's conviction." Although all three said that they could give the defendant a fair trial, the trial judge granted the defendant's challenge and removed one juror because he *Page 1170 
"seems to have had quite extensive knowledge. He's had discussions and so forth." The trial judge stated that the defendant "had the opportunity to determine if this publicity has, in any way, effected this jury and they have all answered that it did not." This finding is fully supported by the record. Consequently, this Court finds no abuse of discretion in refusing to grant the requested continuance. Bosarge v.State, 273 Ala. 329, 139 So.2d 302 (1961); Riley v. State,209 Ala. 505, 96 So. 599 (1923). The mere fact that some of the prospective jurors had read newspaper accounts of the defendant's arrest or previous trial does not establish that they were biased. Anderson v. State, 362 So.2d 1296, 1300
(Ala.Cr.App. 1978). The existence of widespread publicity alone does not indicate that a defendant will be denied a fair trial.Anderson, 362 So.2d at 1298.
The fact that some of the prospective jurors knew of the defendant's previous conviction did not constitute a ground for a challenge for cause. Smith v. State, 207 Ala. 428, 429,93 So. 397 (1922). The mere fact that the jurors had knowledge of the crime itself, and not who was the criminal agent, is not ground for challenge for cause. Foy v. State, 43 Ala. App. 524,528, 194 So.2d 856 (1966), cert. denied, 280 Ala. 714,194 So.2d 860, cert. denied, 389 U.S. 865, 88 S.Ct. 130,19 L.Ed.2d 137 (1967). Potential jurors need not be totally ignorant of the facts of the case. Mayola v. Alabama, 623 F.2d 992, 998-99
(5th Cir.), rehearing denied, 628 F.2d 1354 (5th Cir.), cert. denied, 451 U.S. 913, 101 S.Ct. 1986, 68 L.Ed.2d 303 (1981);Hale v. United States, 435 F.2d 737, 746 (5th Cir.), cert. denied, 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1970). The constitutional standard of juror impartiality does not require that jurors be wholly ignorant of the facts and issues involved in the case. Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639,1642, 6 L.Ed.2d 751 (1961). Thus, exposure does not impair the defendant's right to an impartial jury if the jurors can lay aside any impressions or opinions that result from pretrial media exposure and render a verdict based solely on the evidence presented during the trial. Murphy v. Florida,421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975).
The contention that the defendant had insufficient time between trials "to marshal witnesses necessary to support his defense" is made for the first time on appeal and, consequently, is not supported by facts or evidence. Since it was not brought to the attention of the trial judge, it is not preserved for review. Cole v. State, 361 So.2d 397, 399
(Ala.Cr.App.), cert. denied, 361 So.2d 400 (Ala. 1978). See also Wilson v. State, 53 Ala. App. 653, 654, 303 So.2d 153
(1974).
 C
Our examination of the record convinces us that the trial judge did not commit error in refusing to declare a mistrial because of alleged prejudicial comments of the prosecutor at various stages of the proceedings.
We have already held that the prosecutor's questions to the prospective jurors were proper despite the objections that they involved other defendants in other drug prosecutions.
The defendant also alleges that a mistrial should have been declared because of the following question the State asked undercover agent James Weiland:
 "Q. Mr. Weiland, when you were buying the drugs here, were you dressed as you are now?
"A. No, sir, I was not." (Emphasis added).
The defendant argues that the prosecutor's use of the word "here" indicated to the jury that he was involved in other drug sales. This asserted error has not been preserved for review. There was no motion to exclude and the objection was made only after a responsive answer had been given to the question. Davisv. State, 401 So.2d 187, 190 (Ala.Cr.App.), cert. denied,401 So.2d 190 (Ala. 1981).
The defendant's last allegation of prosecutorial misconduct is that, in closing argument to the jury, the prosecutor referred to the defendant as a "pusher" and *Page 1171 
employed the term "supplying drugs". Although it is usually improper to characterize an accused as a drug pusher where he is only charged with possession (Diamond v. State,363 So.2d 109, 113 (Ala.Cr.App. 1978); Dortch v. State, 41 Ala. App. 349,133 So.2d 43, cert. denied, 272 Ala. 703, 133 So.2d 44 (1961)), the defendant was charged with sale and the evidence showed that he actually sold one-half pound of marijuana to the undercover agents. Under these circumstances, characterizing the defendant as a pusher or supplier of drugs was a reasonable inference from the evidence. Barbee v. State, 395 So.2d 1128
(Ala.Cr.App. 1981).
 D
Although the defendant did not request the trial judge to instruct the jury as to his failure to testify, the trial judge did not err in giving such an instruction. Smith v. State,370 So.2d 312, 316 (Ala.Cr.App.), cert. denied, 370 So.2d 319 (Ala. 1979), specifically noted that "a trial court's inclusion in its oral charge of a reference to failure of a defendant to testify in the case does not necessarily constitute error, even though the allusion to his not testifying was made without defendant's request and contrary to his expressed desire."Smith held that "if an instruction as to the failure of the defendant to testify is given, without its being requested by the defendant, it should set forth completely and clearly as possible the protective feature to the defendant of the principle." 370 So.2d at 318. See also Tinsley v. State,395 So.2d 1069 (Ala.Cr.App.), cert. denied, 395 So.2d 1080 (Ala. 1980).
We distinguish this case from Smith. In Smith, the objectionable and fatal part of the oral charge was that the judge only charged that "no inference can be drawn" from the defendant's failure to testify which "de-emphasized the protective feature" that no inference adverse to the accused
should be drawn from his failure to testify. Here, the trial judge charged that "the fact that the defendant did not testify in this case cannot be considered in determining the defendant's guilt or innocence", and that "(n)o inference or conclusion should be drawn" from that fact "nor should that fact have any weight with the jury in reaching a verdict." (Emphasis added). The instruction in this case is not subject to the fatal flaw found in Smith.
 E
The defendant argues that his motion for new trial should have been granted on the ground of the newly discovered evidence that the undercover agent had been a member of a motorcycle gang contrary to his testimony at trial.
Whether or not the agent was ever a member of "The Brothers" motorcycle gang was not a material issue in this case. The only purpose of this "newly discovered" evidence was to impeach or contradict the witness's trial testimony. Generally, evidence tending merely to contradict or impeach a State witness as to testimony given on trial is not such newly discovered evidence as will warrant the granting of a new trial. Slaughter v.State, 237 Ala. 26, 27, 185 So. 373 (1939).
Additionally, the denial of a new trial cannot be reviewed where the evidence on which the ruling was based is not in the record. Pugh v. State, 247 Ala. 535, 537, 25 So.2d 417 (1946). "Assertions of counsel in an unverified motion for new trial are bare allegations and cannot be considered as evidence or proof of the facts alleged." Smith v. State, 364 So.2d 1, 14
(Ala.Cr.App. 1978). "In reviewing the denial of a motion for new trial, this Court will indulge every presumption in favor of the ruling of the trial court." Smith v. State,393 So.2d 529, 532 (Ala.Cr.App. 1981). Since there is no evidence in the record to show any abuse of the action of the trial judge in denying the new trial, we have nothing to review.
We have answered every issue presented by the defendant. Our review convinces us that the judgments of the circuit court in both convictions should be affirmed.
AFFIRMED.
All Judges concur. *Page 1172