The appellant, Anthony Dewayne Lewis, was found guilty of possession of marijuana, in violation of § 20-2-70, Code ofAlabama (1975), and sentenced to 10 years' imprisonment pursuant to the Habitual Felony Offender Act and fined $5,000.
On July 3, 1986, Investigator Wesley Earl Woodham and Investigator Corporal Devane, of the Narcotics Division of the City of Dothan Police Department, drove to McRae Homes, an apartment complex. Investigator Woodham testified that he had previously received information and complaints concerning drug activity allegedly occurring in the playground area of McRae Homes. At approximately 7:55 p.m., with "about an hour's more of daylight left" the two officers drove to McRae Homes in an unmarked black Oldsmobile. The officers were not in uniform. Investigator Woodham testified that the playground area is located in the center of the apartment complex and is visible from several locations. He testified that, in the center of the playground area, he observed three black males and recognized the appellant. Investigator Woodham testified that he was using "pretty powerful binoculars, seven fifty" and was able to see the males closely. The officers observed the appellant take "some type of cigarette" and "toked on the cigarette." As the appellant did this, he looked around the playground area and then began to hand the cigarette to the male who was standing at his side. The officers in their vehicle then jumped the curb and drove towards the play ground. There were no bushes or obstacles blocking the officers' vision. Investigator Woodham testified that the other black male who had reached out to get the cigarette observed the vehicle, "which is known to be a narcotics investigation car," driving toward them and dropped his hand. The appellant then observed the vehicle approaching, threw the cigarette on the ground and stepped on it. When the vehicle stopped, Investigator Woodham walked to the area where the appellant had stepped on the cigarette, reached down and picked it up. He testified that it was still smoldering. Investigator Woodham searched the vicinity and determined that there were no other cigarettes present and took the three males into custody. Two of them, including the appellant, were arrested for possession of marijuana. Investigator Woodham testified that, although he was not certain upon his approach that the appellant was smoking a marijuana cigarette, he believed that such was the case, stating "[t]he unique characteristic is the way you smoked a hand-rolled cigarette." When he picked up the hand-rolled cigarette, he testified that it was pinched in at one end and, through the other end, he was able to observe a "greenish, brown vegetable material" which he believed to be marijuana. He placed the cigarette in an evidence envelope which he carried in the police vehicle, taped the envelope shut, and initialed over the tape.
A criminalist specializing in drug chemistry testified that Investigator Woodham turned the evidence envelope over to him. The criminalist testified that he examined the plant material and found that it was marijuana. He further testified that it weighed less than a tenth of a gram.
 I
The appellant argues that the evidence of marijuana should have been suppressed because it was obtained by an unconstitutional search and seizure in that there was no probable cause, nor were the police in a location in which they had a right to be for the purposes of the "plain view" exception of a warrantless search and seizure. However, under the facts of this case, the existence of probable cause need not be determined, because the act of dropping the cigarette into the park constituted an abandonment. Carlisle v. State, [Ms. 6 Div. 987, June 30, 1987] (Ala.Cr.App. 1987). The facts of this case are distinguishable from those of Carlisle in that in Carlisle the bag containing marijuana was dropped into the median of a public street, whereas in the case at hand, the cigarette was dropped into the *Page 217 
playground of an apartment complex. While the playground was private property, it was nevertheless "in a place accessible to the general public." W. LaFave, Search and Seizure (2d ed. 1987), § 2.6(b) at 466.
 "The great majority of the court decisions having to do with the abandonment of effects and of search and seizure contexts are similar . . . in that it appears the defendant tried to dispose of certain incriminating objects upon the lawful approach of or pursuit by the police. Thus, effects have been held to be abandoned when they were thrown from a car or motorcycle, when they were dropped to the ground by a pedestrian, when they were left behind in a place accessible to the general public, and when they were thrown out of the window of a residence."
Id.
Thus, the Supreme Court has determined that a warrantless seizure of abandoned property by the police does not violate the Fourth Amendment. Abel v. United States, 362 U.S. 217,80 S.Ct. 683, 4 L.Ed.2d 668 (1960).
 " 'When individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had. United States v. Berd, 634 F.2d 979, 987 (5th Cir. 1981). Therefore, a warrantless search or seizure of abandoned property is not unreasonable under the fourth amendment. [Citations omitted.] The existence of police pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary. United States v. Colbert, 474 F.2d 174, 176 (5th Cir. 1973) see generally, e.g., Berd, 634 F.2d at 987; United States v. Canady, 615 F.2d 694 (5th Cir.), cert. denied, 449 U.S. 862, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980); United States v. Williams, 569 F.2d 823 (5th Cir. 1978); [United States v.] D'Avanzo, 443 F.2d 1224
[(2nd Cir.), cert. denied, 404 U.S. 850
[92 S.Ct. 86, 30 L.Ed.2d 89] (1971)].
 " 'The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object. [Citation omitted.] This determination is to be made by objective standards. United States v. Kendall, 655 F.2d 199, 201 (9th Cir. 1981), cert. denied, 455 U.S. 941, 102 S.Ct. 1434, 71 L.Ed.2d 652 (1982). An expectation of privacy is a question of intent, which "may be inferred from words spoken, acts done, and other objective facts." '
 "United States v. Jones, 707 F.2d 1169, 1172 (10th Cir. 1983), cert. denied, 464 U.S. 859
[104 S.Ct. 184, 78 L.Ed.2d 163] (1983). See also State v. Reed, 284 So.2d 574, 575 (La. 1973)."
Carlisle v. State, supra, slip op. at 3-4.
In the case sub judice, when the appellant dropped the cigarette and stepped on it, the police officers reasonably inferred that the appellant intended to abandon the cigarette.
In order for disposal of property to be held abandoned for purposes of Fourth Amendment analysis, the act disposing of the property must not have been the result of an illegal detention or unlawful police conduct. Carlisle v. State, supra; UnitedStates v. Beck, 602 F.2d 726 (5th Cir. 1979); United States v.Koessel, 706 F.2d 271 (8th Cir. 1983). " 'If the officer does nothing, or if he simply places the individual under surveillance, in the belief that he may possibly witness some criminal activity, then there will no issue of unreasonableness.' " W. LaFave, supra, at 473, quoting Mascolo,The Role of Abandonment in the Law of Search and Seizure: AnApplication of Misdirected Emphasis, 20 Buff.L.Rev. 399 (1971).
The officers clearly had the right to be present at the playground, despite the fact that the last complaint concerning drug activity in that location was received several hours prior to the officers driving to McRae Homes. Investigator Woodham testified that they were continually receiving these complaints and, therefore, he could have reasonably expected that the drug activity was a frequent occurrence. Furthermore, the officers had the right to approach and question the appellant in that the stop was based on specific, objective facts. Terry v. Ohio,392 U.S. 1, *Page 218 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968). Cf. Brown v. Texas, 443 U.S. 47,99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Specifically, the officers were acting on the basis of a number of specific complaints. Moreover, Investigator Woodham testified that, before approaching the appellant, he observed him smoke the cigarette and attempt to pass it in a manner common to marijuana use. The appellant then, upon seeing the police officers' approach, quickly stepped on the cigarette. Such "furtive gestures" may properly be taken into account in determining whether probable cause exists. See, e.g., UnitedStates v. Green, 670 F.2d 1148 (D.C. Cir. 1981) (probable cause found where three people were exchanging items on the street and their movements suggested an attempt to conceal the object of their transaction).
 "As the Supreme Court concluded in Peters v. New York, [392 U.S. 40, 88 S.Ct. 1912, 20 L.Ed.2d 917
(1968)],
 " 'deliberately furtive actions * * * at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest.'
 "Thus, if the police see a person in possession of a highly suspicious object or some object which is not identifiable but which, because of other circumstances, is reasonably suspected to be contraband, and then observe that person make an apparent attempt to conceal that object from police view, probable cause is then present."
W. LaFave, Search and Seizure (2d ed. 1987), § 3.6(d) at 58.
Thus, aside from the fact that the cigarette was abandoned and the police officers therefore required no probable cause for the seizure, they nevertheless had sufficient probable cause to approach the appellant, seize the marijuana, and upon recognizing the cigarette as such, arrest the appellant.
 II
The appellant contends that the trial court erred in its oral instructions to the jury concerning the appellant's failure to testify. Specifically, the appellant argues that he never requested such instructions, but that the trial court twice charged the jury concerning his failure to testify and thereby emphasized his failure to testify. The appellant argues that he was further prejudiced by the trial court's language in the first such charge. The record indicates that the trial court charged the jury as follows:
 "The fact that the defendant did not testify should not be used against him. The Constitution of the United States provides that a person cannot be forced to testify against himself or herself in a criminal trial."
Thereafter, the trial court again charged:
 "The defendant did not testify in his own behalf in this case and the law gives the defendant that right and that privilege. When a defendant does not testify and does stay off of the witness stand, a jury would not be justified in saying that you are going to hold that either for or against the defendant. You cannot hold that either for or against the defendant because the defendant has the right not to testify in a court of law." (emphasis added)
The appellant complains that the trial court's use of the word "against" implied to the jury "that the only reason the defendant did not testify was because he would have had to testify that he was guilty." He argues that such an implication was "too prejudicial." However, it is provided by the Constitution of Alabama of 1901, Art. I, § 6 (in pertinent part):
 "That in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself . . ." (Emphasis added.)
Furthermore, "[t]he Fifth Amendment commands that no person 'shall be compelled in any criminal case to be a witnessagainst himself' " Lakeside v. Oregon, 435 U.S. 333, 336,98 S.Ct. 1091, 1093, 55 L.Ed.2d 319 (1978) (Emphasis added.) Thus, the *Page 219 
trial court was correctly stating the appellant's constitutional right.
The United States Supreme Court in Lakeside v. Oregon,435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978), addressed a situation in which the petitioner objected to a State trial judge giving a cautionary instruction to the jury not to draw any adverse inference from the defendant's decision not to testify in his behalf. The Court held that the giving of this instruction, despite the defendant's objection, does not violate the privilege against compulsory self-incrimination:
 "The petitioner maintains, however, that whatever beneficent effect such an instruction may have in most cases, it may in some cases encourage the jury to draw adverse inferences from a defendant's silence, and, therefore, it cannot constitutionally be given in any case when a defendant objects to it. . . . In such circumstances, the giving of the cautionary instruction, he says, is like 'waving a red flag in front of the jury.'
 "The petitioner's argument would require indulgence in two very doubtful assumptions: First, that the jurors have not noticed that the defendant did not testify and will not, therefore, draw adverse inferences on their own; second, that the jurors will totally disregard the instruction, and affirmatively give weight to what they have been told not to consider at all.
. . . . .
 "Moreover, even if the petitioner's simile be accepted, it does not follow that the cautionary instruction in these circumstances violates the privilege against compulsory self-incrimination. The very purpose of a jury charge is to flag the jurors' attention to concepts that must not be misunderstood, such as reasonable doubt and burden of proof. To instruct them in the meaning of the privilege against compulsory self-incrimination is no different."
Lakeside v. Oregon, 435 U.S. at 339-40, 98 S.Ct. at 1095.
Courts in Alabama have adopted this holding with the proviso that the instruction must completely and clearly set forth the "protective feature" of this rule for the defendant's rights. See Smith v. State, 370 So.2d 312, 317-18 (Ala.Cr.App. 1979), writ denied by Ex parte State Ex rel. Attorney General,370 So.2d 319 (Ala. 1979) (wherein the charge "that no inference can be drawn" was "subject to a reasonable construction by the jury, unacquainted with the refinements of the law on the subject, that no inference unfavorable to the State could be drawn from the failure of the State to have the defendant testify as to his guilt or innocence").
 " 'Even where not requested a trial judge may instruct the jury on the legal effect of the accused's exercise of his constitutional right not to testify in his own behalf.' Prince v. State, 420 So.2d 856 (Ala.Cr.App. 1982); Tinsley v. State, 395 So.2d 1069 (Ala.Cr.App.), cert. denied, 395 So.2d 1080 (Ala. 1981); Smith v. State, 370 So.2d 312
(Ala.Cr.App.), cert. denied, 370 So.2d 319 (Ala. 1979). However, this instruction should completely and clearly charge the jury that 'the fact that the defendant did not testify could not be considered in determining guilt or innocence.' Tucker v. State, 429 So.2d 1165 (Ala.Cr.App. 1983)."
Crowe v. State, 485 So.2d 351, 360 (Ala.Cr.App. 1984), reversed by Ex parte Crow, 485 So.2d 373 (Ala. 1985).
The trial court was clearly attempting to protect the appellant by giving these charges and insuring that the jury understood this "highly important right of a defendant."Jordan v. State, 392 So.2d 1230, 1233 (Ala.Cr.App. 1980), writ. denied, 392 So.2d 1233 (Ala. 1981) (judgment reversed because of the trial court's refusal to give such charge). See alsoTownsend v. State, 500 So.2d 105 (Ala.Cr.App. 1986).
 "The entire charge must be construed as a whole. Harris v. State, 412 So.2d 1278, 1281 (Ala.Cr.App. 1982). When reviewing a judge's oral charge, 'each statement made by a judge to the jury should be examined in light of the entire charge and . . . isolated statements which appear prejudicial when taken out of context may be innocuous when viewed in *Page 220 
light of the entire trial.' United States v. McCoy, 539 F.2d 1050, 1063 (5th Cir. 1976.), cert. denied, 431 U.S. 919, 97 S.Ct. 2185, 53 L.Ed.2d 230
(1977)."
Kennedy v. State, 472 So.2d 1092, 1103 (Ala.Cr.App. 1984), affirmed Ex parte Kennedy v. Alabama, 474 U.S. 975,106 S.Ct. 340, 88 L.Ed.2d 325 (1985), cert. denied by Kennedy v. Alabama,474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985).
 III
The appellant argues that the trial court erred in requiring his counsel to rephrase his voir dire questioning and in refusing to give his requested jury instruction that the State must assume and carry the burden to establish the guilt of the defendant beyond "all reasonable doubt." The record indicates that during the voir dire examination, the trial court sustained the prosecutor's objection and ordered the appellant's attorney to rephrase his voir dire question to make the burden of proof for the State "beyond a reasonable doubt" rather than "beyond all reasonable doubt." Thereafter, the trial court also refused the appellant's requested jury instruction which would have charged:
 "The Court charges you that the State must assume and carry the burden to establish the guilt of the Defendant beyond all reasonable doubt and to a moral certainty."
However, the Alabama Supreme Court in Chavers v. State,361 So.2d 1106 (Ala. 1978), stated: "We do not approve the use of the expression 'all reasonable doubt,' instead of the expression 'a reasonable doubt' in that charge." Id. at 1108. The Court quoted from Breazeale v. State, 51 Ala. App. 320,285 So.2d 130 (1973), in which the trial court's refusal to give defendant's requested charge containing "beyond all reasonable doubt" was affirmed. See also Craft v. State, 402 So.2d 1078
(Ala.Cr.App.) writ denied, 402 So.2d 1080 (Ala. 1981) ("all reasonable doubt" is an incorrect statement of the law, at 1080).
"The State is not required to prove guilt beyond all doubt, but only beyond a reasonable doubt. Rice v. State, 204 Ala. 104,106, 85 So. 437 (1920); Talley v. State, 174 Ala. 101,106, 57 So. 445 (1912); Bones v. State, 117 Ala. 138,23 So. 138 (1898)." Dolvin v. State, 391 So.2d 666, 673 (Ala.Cr.App. 1979), affirmed Ex parte Dolvin, 391 So.2d 677 (Ala. 1980).
 IV
the appellant raises two other issues, but fails to cite any authority in support of these issues. Specifically, he argues error in the trial court's refusal to give several requested jury instructions and in failing to allow the jury to visit the scene of the alleged crime because he argues that the testimony of a State's witness was inconsistent with the photographs produced by the defense depicting the scene of the crime.
 "This Court observed in Vinzant v. State, 462 So.2d 1037, 1039 (Ala.Cr.App. 1984), that the Alabama Rules of Appellate Procedure require that all arguments presented in an appellate brief have a list of authorities in support of the issue presented. Rule 28(a)(5), A.R.A.P. 'Arguments not based on any legal authority have the same effect as if no argument had been made, and argument will be deemed waived. Jones v. City of Decatur, 53 Ala. App. 470, 301 So.2d 235 (Ala.Cr.App. 1974); Terry v. City of Decatur, 49 Ala. App. 652; 275 So.2d 167 (Ala.Cr.App. 1973).' Vinzant, supra; see also Andrews v. State, 473 So.2d 1211 (Ala.Cr.App. 1985): Since the appellant did not comply with the requirements of Rule 28(a)(5), the evidentiary issues are not properly before us for review. Even if the appellant had complied with the requirements of Rule 28(a)(5), we are convinced that the trial court's rulings did not injuriously affect the substantial rights of the appellant. Rule 45, A.R.A.P."
O'Neal v. State, 494 So.2d 801, 803 (Ala.Cr.App. 1986).
AFFIRMED.
All the Judges concur. *Page 221