James R. Stanfield was convicted for trafficking in cocaine, the unlawful possession of meperidine, and the unlawful possession of marijuana. The respective sentences were ten years' imprisonment and a fine of $50,000, three years' imprisonment, *Page 1055 
and twelve months' imprisonment, the terms of imprisonment to run concurrently.
 I
The defendant argues that the warrantless searches of his person and his automobile were illegal and in violation of the Fourth Amendment.
At approximately 6:30 on the evening of September 30, 1983, agents of the West Alabama Narcotics Squad executed a search warrant at 20-W Skyland Apartments in Tuscaloosa, the residence of Rick Krebs and Fred Selman. Officer Terry Pennington testified that within a forty-eight hour period before that time he had "received some information that a fellow named 'Ron' would be delivering a quantity of cocaine to 20-W Skyland Apartments, the residence of a Mr. Selman and Mr. Krebs; and further that this Ron was from the Montgomery area," and "that he would be in sometime around 7:00 o'clock." Pennington testified that he had received information from this informant on "several" occasions. He did not state what that information was, whether or not it had led to arrests, or whether or not that information had proven correct or accurate.
The probable cause to search the apartment was "separate" and "independent" from the information received from Officer Pennington's informant about "Ron." The search warrant and affidavit are not contained in the record. On this appeal, this defendant does not challenge the propriety of either the search warrant or the search of the apartment.
Officer Eldon Willingham was stationed outside the apartment. He radioed the officers inside the apartment that "there was a white male coming in a Chevrolet that had a Montgomery County plate on it." Sometime between a "few minutes" and twenty minutes after 7:00 that evening, the defendant knocked on the door of the apartment. Officer Dennis Levins opened the door. Officer Ken Miksis testified that he identified himself as "Ron" in response to Officer Miksis's question. Officer Pennington testified that Officer Miksis identified himself as "Ken" and identified himself as a police officer only after the defendant had already identified himself as "Ron" after he entered the apartment. Officer Pennington testified that Miksis then "told [the defendant] to come on in and go over and have a seat on the couch."
The defendant was carrying a paper bag which contained beer. The defendant sat down on the couch. Officer Miksis testified that he "observed [the defendant] stuffing a little black pouch or a little black bag into the cushion of the chair." Miksis retrieved the bag, found it to contain "a marijuana or hash pipe, a little bit of suspected hash, and a little vial of cocaine — suspected cocaine," and then advised the defendant of his Miranda rights.
Officer Levins testified that before Officer Miksis searched the defendant's bag and discovered the contraband, he had gotten the defendant's car keys from the defendant and left the apartment to search the defendant's car. Officer Willingham testified that, when he entered the apartment, Officer Miksis was reading the defendant his rights, that Officer Levins got the defendant's keys, and that he and Levins then left the apartment and searched the defendant's car. A thermos containing cocaine was found inside a "nylon totebag" inside the car. Also discovered were an automatic pistol, subsequently discovered to be stolen, a briefcase containing $4,960, and some mepergan capsules.
Agent Pennington testified Levins got the defendant's keysafter the defendant had been searched. On cross-examination, he admitted that it was "possible" that Officer Levins got the defendant's keys before the defendant's bag had been searched.
The trial court found that "the search of the vehicle is based on information from a reliable confidential informant which was corroborated by the events of that day." We find that the searches of the defendant's person and his vehicle were justified.
"[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Page 1056 Ybarra v. Illinois, 444 U.S. 85, 91, 100 S.Ct. 338, 342,62 L.Ed.2d 238 (1979). The mere presence of an individual at a place where a search warrant is about to be executed does not justify the search of that person. "[T]he search of persons not named or described in the warrant, but found on premises or who come onto premises being searched, is not made lawful simply by their presence; the law requires that there be probable cause to believe that such persons are themselves participants in criminal activity." Smith v. State, 292 Ala. 120, 121,289 So.2d 816, 817 (1974). "A warrant for premises does not permit searches of persons which are not reasonably believed to be associated with it." J. Hall, Jr., Search and Seizure, Cumulative Supplement, March 1987, at p. 527.
In this case, we find that the defendant's presence at the apartment being searched, when coupled with information known to the officers and the defendant's furtive movements in "stuffing a little black pouch or a little black bag into the cushion of the chair," provided the probable cause necessary to justify the search of the defendant's person. In determining whether the police had probable cause to search the defendant, we apply the "totality of the circumstances" analysis ofIllinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527
(1983); Spann v. State, 494 So.2d 719 (Ala. 1986). "We recognize that Gates dealt with probable cause for the issuance of a warrant. . . . This determination of probable cause, however, is applicable to both warrant and warrantless searches." UnitedStates v. Mendoza, 722 F.2d 96, 100 n. 5 (5th Cir. 1983). See also Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031,28 L.Ed.2d 306 (1971).
Although the two-pronged test of Aguilar v. Texas,378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v.United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637
(1969), was rejected in Gates, see Massachusetts v. Upton,466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984), an informant's veracity and basis of knowledge are still "highly relevant" in determining the existence of probable cause. Gates,462 U.S. at 230, 103 S.Ct. at 2327.
 "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238, 103 S.Ct. at 2332.
Here the informant's tip did not supply the necessary probable cause. The informant's credibility was not established by past performance. Officer Pennington did not testify that his informant was reliable. See Neugent v. State, 340 So.2d 52,54 (Ala. 1976). The basis of the informant's knowledge was also not established. See Channell v. State, 477 So.2d 522, 525
(Ala.Cr.App. 1985). Thus, the tip failed to satisfy both prongs of the Aguilar-Spinelli test. "Something more was required, then, before a magistrate could conclude that there was probable cause. . . ." Gates, 462 U.S. at 227,103 S.Ct. at 2326. "Under Gates, it has been held that corroboration of innocent details can be enough to show probable cause under the totality of the circumstances," J. Hall, Jr., Search andSeizure § 5.23 at 192 (March 1987, Cum. Supp.), even where neither the informant's veracity nor basis of knowledge has been otherwise established. W. LaFave, 1 Search and Seizure § 3.3(f) at 693-95 (2d ed. 1987).
Although the Tuscaloosa police officers here corroboratedall the innocent details of the tip before searching the defendant, i.e., they determined that the defendant's name was Ron, that he was from Montgomery County, and that he had arrived shortly after 7:00 p.m., those details simply did not furnish a " 'substantial basis for . . . conclud[ing]' that probable cause to search . . . existed," Gates,462 U.S. at 246, 103 S.Ct. at 2336. While it is true that the tip in the instant case predicted the "future actions of [a] third part[y]," 462 U.S. at 245, 103 S.Ct. at 2335-36, it did not provide the party's last name or even the most *Page 1057 
general of physical descriptions, such as race and approximate age, to say nothing of his address or means of travel. Even the anonymous letter in Gates (which the Court characterized as containing a "range of details," 462 U.S. at 245,103 S.Ct. at 2335) included the full name of the suspects, their address, their mode of travel, and certain aspects of their lifestyle, such as the fact that they allegedly had $100,000 worth of drugs in their basement, bragged about never having to work, and were frequently visited by "big drug dealers." Gates,462 U.S. at 225, 103 S.Ct. at 2325. Here we have only a first name ("A fellow named 'Ron' "), a general place of residence ("from the Montgomery area"), and a time of arrival ("sometime around 7:00 o'clock". Like the Texas Court of Appeals in Correll v.State, 696 S.W.2d 297, 299 (Tex.App. 1985), "[w]e have examined an exhaustive number of state and federal decisions which have been decided since the opinion of Illinois v. Gates but we have found none, and the State has referred us to none, which have been affirmed based on a supporting affidavit with as little facts as are presented in this case." Compare United States v.Martinez, 764 F.2d 744 (10th Cir. 1985) (tip contained detailed physical description of suspect, including birthdate, age, and nationality, as well as address, description of vehicle, and exact travel schedule); United States v. Porter, 738 F.2d 622
(4th Cir.), cert. denied, 469 U.S. 983, 105 S.Ct. 389,83 L.Ed.2d 323 (1984) (tip contained suspect's full name, race, height, weight, and detailed description of clothing which suspect would be wearing upon arrival with contraband);Channell v. State, 477 So.2d 522 (Ala.Cr.App. 1985) (tip included color, year model, and tag number of suspect's vehicle, as well as description of driver and passenger);Seltzer v. State, 489 N.E.2d 939 (Ind. 1986) (in addition to information about defendant himself, tip contained names of defendant's roommates, and description of class ring of defendant's victim); State v. Westover, 127 N.H. 130,497 A.2d 1218 (1985) (tip contained suspect's phone number, verified by police as a number frequently called by subjects of an ongoing drug investigation, and linked to an address whose occupant had numerous visitors at all hours); Castleberry v. State,678 P.2d 720 (Okla.Cr.App. 1984), judgment aff'd Oklahoma v. Castleberry,471 U.S. 146, 105 S.Ct. 1859, 85 L.Ed.2d 112, 53 U.S.L.W. 4450 (1985) (tip included defendant's last name, physical description, and vehicle type); Whaley v. State, 686 S.W.2d 950
(Tex.Cr.App. 1985) (tip contained detailed description of suspect's person and clothing, as well as exact address);Eisenhauer v. State, 678 S.W.2d 947 (Tex.Cr.App. 1984) (tip contained detailed physical description of suspect and predicted his exact attire on arrival).
The lack of detail — innocent or otherwise — provided by the tip here stands in sharp contrast to the above-cited cases, as well as to Draper v. United States, 358 U.S. 307,79 S.Ct. 329, 3 L.Ed.2d 327 (1959), and to Gates, wherein it could be assumed that because of the detail the informants in those cases "had access to accurate information" about illegal activities. 462 U.S. at 245, 103 S.Ct. at 2336. The tip here was as insubstantial as a "casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." Spinelli, 393 U.S. at 416,89 S.Ct. at 589. "This meager report could easily have been obtained from an offhand remark heard at a neighborhood bar." Id. at 417,89 S.Ct. at 589.
The fact that the Tuscaloosa officers corroborated all the innocent details of the tip adds little to the probable cause equation because those details were so sketchy and incomplete. This tip was even less detailed that the one held insufficient in State v. Calhoun, 502 So.2d 795, 803 (Ala.Cr.App.), affirmedas to instant issue, Ex parte State, 502 So.2d 808, 811-12
(Ala. 1986) (wherein the informant provided the suspects' names, but not their descriptions, the type and color of the suspect vehicle, but not its exact destination). "In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." 462 U.S. at 244 *Page 1058 
n. 13, 103 S.Ct. at 2335 n. 13. In Gates, the accused's flight to a known port of entry for narcotics, his brief overnight stay, and his immediate return north in a waiting car were suspiciously "suggestive of a prearranged drug run."462 U.S. at 243, 103 S.Ct. at 2335. Here, however, aside from the fact that the defendant's destination was a residence then being searched for drugs, the degree of suspicion which attached to his arrival from Montgomery at a given apartment in Tuscaloosa at 7:00 p.m. was virtually nil, and his itinerary was not
highly suggestive of any criminal activity. We, therefore, conclude that the officers did not have probable cause to search the defendant based on the tip they had received or upon their subsequent corroboration of details of the tip.
They did, however, have authority under Terry v. Ohio,392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to detain the defendant briefly for questioning. See State v. Calhoun, 502 So.2d at 805-07. Although the tip and the corroboration of its predictions did not supply probable cause, it did provide the officers with a reasonable suspicion that defendant might be engaging in criminal activity. See Adams v. Williams,407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). The defendant's association with the apartment for which there was probable case to search for contraband sufficed for a Terry stop even though his association was not strong enough to justify an arrest or an immediate search. See LaFave, 3 Search and Seizure
§ 9.3(c) at 454.
 "This is not to suggest, contrary to Ybarra, that a search of the person for the property may be undertaken upon less than probable cause. Rather, the point is that if there is a sufficient degree of suspicion to justify a brief seizure of the individual for investigation, that investigation may resolve the uncertainty in the minds of the officers concerning the possible connection of that individual with the property named in the warrant." W. LaFave, 2 Search and Seizure § 4.9(c) at 297. See also State v. Torres, 197 Conn. 620, 500 A.2d 1299 (1985) (visitor to apartment being searched could be detained under Terry); State v. Wise, 284 A.2d 292 (Del.Super. 1971) (customer in store being searched could be detained on reasonable suspicion of criminal activity).
The Tuscaloosa officers were, therefore, justified in briefly detaining the defendant for investigation. Their suspicion ripened into probable cause to search him when they saw him "stuffing a little black pouch or a little black bag into the cushion of the chair."
 "As the Supreme Court concluded in Peters v. New York [392 U.S. 40, 88 S.Ct. 1889, [1912], 20 L.Ed.2d 917 (1968)],
 " 'deliberately furtive actions . . . at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest.'
 "Thus, if the police see a person in possession of . . . some object which is not identifiable but which because of other circumstances is reasonably suspected to be contraband, and then observe that person make an apparent attempt to conceal that object from police view, probable cause is then present." LaFave, 2 Search and Seizure § 3.6(c) at 58.
The ensuing search of the defendant's bag was lawful and the contraband found in the bag gave the officers probable causeat that point to search the defendant's car. See Robinette v.State, 531 So.2d 682 (Ala.Cr.App. 1987).
In the present case we do not know what if any contraband was discovered in the apartment as a result of the execution of the search warrant, or whether that contraband would have been "material and relevant evidence against" this defendant. We cannot conclude from this record, as we did inRobinette, that a drug distribution and trafficking operation, of which defendant was a part, was being conducted on the premises. However, we can conclude that *Page 1059 
the police were justified in believing that defendant's vehicle would contain contraband. The combination of the initial tip that defendant would be delivering a quantity of cocaine to the residence and the actual discovery of contraband in the defendant's bag "would have justified the issuance of a search warrant authorizing a search of the automobile." Robinette, supra.
Thus, although there was probable cause to search the vehicle driven by the defendant and parked in the lot outside the apartment, that probable cause did not arise untilafter drugs were found in the defendant's bag. The record contains a factual dispute about whether the car was searched before or after the drugs were found in defendant's bag.
Officer Pennington testified that the vehicle search occurredafter the drugs were discovered in the bag, but conceded, on cross-examination, that Officer Levins may have obtained the defendant's car keys before the drugs were found in the bag.
Officer Willingham, who helped Officer Levins with the vehicle search also stated that the car was searchedafter the bag was searched. On the other hand, Officer Levins, who conducted the auto search, said that it occurred before the bag was searched. We are unable to resolve, and, indeed, it is not our function to settle, this factual dispute on the record before us. The trial court made no explicit factual finding on this disputed issue. We are unable to determine whether the trial court implicitly resolved the factual question because his ruling (that "the search of the vehicle is based on information from a reliable confidential informant which wascorroborated by the events of that day") is unclear regarding at what point he considered probable cause to have arisen.
The court may have found either (1) that corroboration of the innocent details of the tip ("Ron's" arrival at 7 p.m.) gave rise to probable cause, or (2) that corroboration of the incriminating details of the tip ("Ron's" delivery of cocaine) gave rise to probable cause. The first finding, which we hold is erroneous, would have obviated the need to determine exactly when the vehicle search occurred because, under that view, the officers had probable cause to search Ron and his vehicle the moment his identity and arrival were confirmed. The second finding, however, would have required a determination that the car search took place after the bag search because, under that view, probable cause to search the vehicle did not arise until drugs were found in the bag.
"When it does not affirmatively appear on what ground or grounds the decision was made, it is the duty of the appellate court to sustain the court below if there was any ground disclosed by the record on which the judgment or order could properly have been made." 5 C.J.S. Appeal and Error § 1464(1) at 667 (1958). "If a trial court's ruling is correct for any reason, it will not be reversed on appeal." Duncan v. State,436 So.2d 883, 903 (Ala.Cr.App. 1983), cert. denied,464 U.S. 1047, 104 S.Ct. 720, 79 L.Ed.2d 182 (1984); Collier v. State,413 So.2d 396, 403 (Ala.Cr.App. 1981), affirmed, 413 So.2d 403
(Ala. 1982). Here, the evidence necessary to uphold the trial court's ruling on appeal, i.e., that the vehicle was searched only after drugs were found in the defendant's bag, though disputed, is not "palpably contrary to the weight of the evidence" on this point, and is, therefore, sufficient to uphold the trial court's ruling. See Isbell v. State,428 So.2d 215, 217 (Ala.Cr.App. 1983); Coots v. State, 434 So.2d 864, 867
(Ala.Cr.App. 1983).
Here, the trial court's ruling was not specific enough to admit of only one legal interpretation and there were no express findings of fact. The facts in favor of the court's ruling, though disputed, are sufficient to uphold the judgment.
Having determined that there was probable cause to believe that the vehicle driven by defendant contained cocaine or other contraband, we conclude that the car was properly searched pursuant to the "automobile exception" to the warrant requirement. See California v. Carney, 471 U.S. 386,105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); United States v. Johns, *Page 1060 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985); Michigan v. Thomas,458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982); UnitedStates v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572
(1982); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975,26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132,45 S.Ct. 280, 69 L.Ed. 543 (1925).
The post-1982 Supreme Court decisions involving the automobile exception have sent a clear and unmistakable signal: "no warrant is needed even absent true exigent circumstances." LaFave, 3 Search and Seizure §§ 7.3(a) at 79, 7.3(b) at 82. "After Ross, . . . probable cause is sufficient in all instances to justify a warrantless search of a vehicle . . ." W. Ringel, Searches and Seizures, Arrests and Confessions § 11.3 (2d ed. 1987) (quoted in Robinette v. State, 531 So.2d at 690). Taken together, Ross, supra, Johns, supra, andCarney, supra, are "grounded primarily on a 'lesser expectation of privacy' theory and . . . abandon[ed] even the pretense of exigent circumstances attributable to the continued mobility of the vehicle." LaFave, 3 Search and Seizure § 7.2(b) at 38, 7.2(d) at 63.
Upon this authority, we hold, generally, a vehicle may be searched on probable cause without a warrant and without a demonstration of any exigent circumstances other than its own inherent or ready mobility. The exception to this general rule applies when the vehicle is located on premises where the defendant has a legitimate expectation of privacy, see Coolidgev. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564
(1971); Robinette v. State, supra. The search here was, therefore, not unlawful.
 II
The defendant's argument that the State failed to prove his actual or constructive possession of the cocaine in the vehicle is unavailing. Here, the defendant's constructive possession of the cocaine in the thermos contained within the nylon totebag was proved by his own statements to the authorities. The defendant "claimed" possession of the nylon totebag and the personal toilet articles inside. His statement to Officers Pennington and Willingham that the cocaine in the thermos would weigh "more than an ounce" conclusively proved "knowledge by the accused of the presence of the controlled substance," seeTemple v. State, 366 So.2d 740, 741 (Ala.Cr.App. 1978); Walkerv. State, 356 So.2d 672, 674 (Ala. 1977).
The fact that the vehicle here may have been registered to someone other than the defendant does not bring this case within the holding of Korreckt v. State, 507 So.2d 558
(Ala.Cr.App. 1986). In Korreckt, cocaine was discovered in two places on the premises occupied by defendant: inside his residence and inside a feed bag located in the bed of a truck being used by the defendant but owned by a third party. Other contraband and paraphernalia were located in the cab of this truck. The accused in Korreckt claimed the items discovered in the cab of the truck but disavowed knowledge or ownership of the items found in the bed of the truck. In contrast, here the defendant "claimed" the nylon totebag and did not disavow ownership of anything it contained.
Furthermore, in Korreckt, the owner of the truck was residing in the area and had had recent access to the truck. Here, however, the owner of the vehicle, according to what the defendant informed Officers Pennington and Willingham, was the defendant's former girlfriend, who had moved to Massachusetts. The defendant told the officers that following the break-up with his girlfriend he had neither seen nor heard from her in three months.
Finally, in light of the defendant's informing the Tuscaloosa authorities that the cocaine would be "over an ounce," it is immaterial whether the cocaine discovered on his person and the cocaine found in the vehicle were shown to be qualitatively the same. Unlike the situation in Korreckt, here the defendant's own statements provided his link to the cocaine discovered in the vehicle. Cf. Korreckt v. State, supra (wherein the cocaine found inside the residence and the cocaine discovered in the truck could not be logically linked because *Page 1061 
they contained different diluting substances).
AFFIRMED.
All Judges concur.