Georgette Singleton was indicted for trafficking in cocaine and possession of marijuana, in violation of § 20-2-80, Code of Alabama 1975. She was "found guilty as charged in the indictment" and was sentenced *Page 690 
to 20 years in prison. She raises seven issues on appeal.
 I
The appellant Singleton first contends that the trial court erred in denying her motion for mistrial after evidence concerning a prior search of her home was admitted into evidence. The record reveals that the first reference to the earlier visit by law enforcement officers to the appellant's home occurred during the direct examination of Officer Terry Ratigan as follows:
 "Q Had you ever been there before [appellant's apartment]?
"A Yes.
"Q What date?
 "A It was July, I believe. I don't know the exact date.
"Q Did you actually go inside the house in July?
"A Yes ma'am.
"Q So you were familiar with this location?
"A Yes." (R. 110)
The appellant failed to object to this testimony. The record also reveals that the appellant did object to several subsequent references made to the July incident.
"To be timely, an objection to admission of certain evidence must be made as soon as the ground for one objection becomes apparent. By allowing the prosecution to elicit the allegedly erroneous testimony without objection and subsequently entering no motion to exclude th[e] testimony, [the appellant] waived any alleged error committed by the trial court in overruling his objections." Leverett v. State, 462 So.2d 972, 979
(Ala.Cr.App. 1984) (citations omitted). See also Wynn v. State,423 So.2d 294 (Ala.Cr.App. 1982). "[I]t is well-established that it is not error to allow facts to be shown over objection when they have already been proven without objection." Hunt v.State, 453 So.2d 1083, 1086-87 (Ala.Cr.App. 1984). See alsoWatson v. State, 398 So.2d 320 (Ala.Cr.App. 1980), cert.denied, 398 So.2d 322 (Ala. 1981). The appellant should have raised her objection to this testimony when it was first presented. Therefore, she failed to preserve this issue for review.
The record reveals that, during the second time the July incident was raised, there was a reference to the execution ofa search warrant. This also occurred during the direct examination of Officer Ratigan. The trial judge immediately instructed the jury to disregard the testimony concerning the execution of a search warrant and also explained that the testimony concerning the presence of the law enforcement officers at the appellant's residence in July was relevant to other issues in the case. We need not address the admissibility or inadmissibility of the reference to the search warrant because, even if such testimony was found to be inadmissible, the trial judge gave the jury prompt, curative instructions. When a trial court immediately instructs the jury to disregard any improper remarks, there is a prima facie presumption against error. Woods v. State, 460 So.2d 291 (Ala.Cr.App. 1984); Hammins v. State, 439 So.2d 809 (Ala.Cr.App. 1983). A mistrial is properly denied when the prejudicial qualities of a remark can be cured by the trial court. Woods, Mallory v.State, 437 So.2d 595 (Ala.Cr.App. 1983), cert. denied,464 U.S. 1047, 104 S.Ct. 722, 79 L.Ed.2d 184 (1984). The appellant's motion for mistrial was properly denied.
We also point out that the appellant is responsible for the fourth reference to the July 23, 1987, visit. The following occurred during the appellant's cross-examination of Officer Ratigan:
 "Q You testified earlier, and I objected strenuously to it, but you did it anyway, that you had been over to that house in June or July, something like that?
"A July.
 "Q And this particular search warrant you are talking about was in October?
"A Yes, sir." (R. 206)
Certainly, if anyone called the jury's attention to the alleged inadmissible evidence, it was the appellant. *Page 691 
 II
The appellant next contends that the trial court made two prejudicial statements in front of the jury that require a reversal of her conviction. The record reveals that the appellant failed to object to or move to exclude either statement. "Unless allegedly prejudicial remarks are objected to, they are not subject to review except where they are grossly improper. There must be either an objection, a motion to exclude, or a motion for the jury to disregard the statement before error is preserved." Lokos v. State, 434 So.2d 818, 823
(Ala.Cr.App. 1982), aff'd, 434 So.2d 831 (Ala. 1983). Even if this issue had been preserved for review, there is no indication in the record that the appellant was prejudiced in any way by the statements which she cites to this court. SeeGurganus v. State, 520 So.2d 170 (Ala.Cr.App. 1987).
 III
The appellant contends that she was deprived of her constitutional right to testify in her own behalf because the trial court implied that she could be impeached with evidence concerning the July search if she took the stand. This argument has no merit. The following excerpt from the record contains the exchange between the court and defense counsel upon which the appellant's argument is based:
 "MR. MATHIS: I would like to put on the record, just for the record's sake, that I am going to rest simply because of the fact that the Court's prior ruling indicated to me that if I were to put on a case wherein my client were to testify, this prior act that the Court changed its mind on earlier would come in.
 "THE COURT: Well, it would depend on what your client would say.
 "MR. MATHIS: Well, if my client got up there and denied knowledge of the cocaine in the trunk of that automobile, which she would have to do if she took the witness stand at all, then it is my understanding that that other would come in —
 "THE COURT: Well, I haven't really defined the ruling —
 "MR. MATHIS: — yes, sir. So, we are not putting on a defense for that purpose. It had been our intention for my client to do just exactly that, but if that other is going to come in in that regard, then we simply will not be in a position to —
 "THE COURT: Well, I appreciate you trying to pin me to the wall on it, Erskine, but I don't know what my ruling would be until I hear her testimony.
 "MR. MATHIS: Well, you have certainly indicated, Your Honor, that were she to deny knowledge of that cocaine in the trunk of that automobile —
"THE COURT: That the July search may be —
"MR. MATHIS: — yes, sir.
"THE COURT: — may, may.
 "MR. MATHIS: Well, I was under the impression that it had already at one point been ruled that it would be admissible anyway. And out of the goodness of the Court's heart, because of the surprise factor that we just discussed in my regard —
"THE COURT: That is a fair statement —
 "MR. MATHIS: — the Court did not allow it in. So, with that in mind, those are the very reasons why I will not be putting on a case, although I had planned to.
"THE COURT: Fair enough.
"MR. MATHIS: Thank you, sir." (R. 442-444)
The trial court clearly stated that the admissibility or inadmissibility of such evidence would be determined when the question actually arose. The appellant's argument is based solely on speculation and conjecture. Since there was no adverse ruling against the appellant, there is nothing for this court to review. Hill v. State, 409 So.2d 943 (Ala.Cr.App. 1981).
Without a ruling, a request for a ruling or an objection to the trial court's failure to rule, there is nothing preserved for review. Moore v. State, 457 So.2d 981 (Ala.Cr.App. 1984),cert. denied, 470 U.S. 1053, 105 S.Ct. 1757, 84 L.Ed.2d 820
(1985). Furthermore, even if the evidence was held *Page 692 
to be admissible at the time it was offered, the fact that such evidence could impeach the appellant would not prevent her from testifying in her own behalf. All witnesses who take the stand may be subject to impeachment.
 IV
The appellant contends that the trial court erred in denying her motion for judgment of acquittal because there was insufficient evidence to sustain the conviction. The appellant argues that the State did not sufficiently prove that the appellant had knowledge of the cocaine found in the car. The appellant also contends that the State did not sufficiently connect her with the contraband found in the apartment because she allegedly shared the apartment with another individual.
Alabama Code 1975, § 20-2-80(2), provides that anyone who is knowingly in actual or constructive possession of 28 grams or more of cocaine is guilty of trafficking in cocaine:
 "Constructive possession arises only where the illegal substance is found on premises owned or controlled by the accused. Campbell v. State, 439 So.2d 718 (Ala.Cr.App.), rev'd on other grounds, 439 So.2d 723 (Ala. 1983); Williams v. State, 340 So.2d 1144 (Ala.Cr.App. 1976), cert. denied, 340 So.2d 1149 (Ala. 1977). When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances. Campbell v, State; Yarbrough v. State, 405 So.2d 721 (Ala.Cr.App.), cert. denied, 405 So.2d 725 (Ala. 1981). This knowledge may be inferred from the accused's exclusive possession, ownership, and control of the premises. Temple v. State, 366 So.2d 740 (Ala.Cr.App. 1978). When the accused is not in exclusive possession of the premises, however, this knowledge may not be inferred unless there are other circumstances tending to buttress this inference. Korreckt v. State, 507 So.2d 558 (Ala.Cr.App. 1986); Temple v. State. While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Grubbs v. State, 462 So.2d 995 (Ala.Cr.App. 1984); Temple v. State."
Robinette v. State, 531 So.2d 682, 686 (Ala.Cr.App. 1987),aff'd, 531 So.2d 697 (Ala. 1988). See also Borden v. State,523 So.2d 508 (Ala.Cr.App. 1987).
The record reveals the following: Officer Terry Ratigan arrived at the appellant's apartment on October 29, 1987, to execute a search warrant. He announced the arrival of the sheriff's department at the door. Upon receiving no answer, he forcibly entered the apartment by breaking the lock on the door. When Ratigan entered the apartment, he found that Officer Dennis Blanton had already entered through the back door and had stopped another individual, Joyce Johnson, in the apartment. Ratigan went to the front bedroom and saw the appellant sitting on the bed in a t-shirt and underpants. There were a couple of drinking straws that were cut in half lying on the bed with her. There was a white substance at the end of one straw that was later identified by a forensic chemist as cocaine crystals. There was also a playing card with white powder on it lying on the bed and a total of $4,100 in various denominations was also on the bed. There was also a set of car keys on the bed. Cocaine was found under the bed. Two rolls of empty pink baggies were found in a dresser drawer in the bedroom. A paper bag containing drug paraphernalia was found in the living room. Both a power bill and a cable bill addressed to the appellant at the apartment were found on top of the television in the bedroom. A phone bill addressed to Joyce Johnson at the apartment and promotional mail addressed to Joyce Johnson were also found. The appellant gave the officers the address of the apartment where the search took place asher address. Joyce Johnson gave the officers an address in Bessemer.
Officer Ratigan testified that a red Chevrolet Caprice was parked very close to the *Page 693 
bedroom window where the appellant was found. The car had been backed into the parking space. He observed a partially burned marijuana cigarette from outside the vehicle. He asked the appellant if the red car was hers and she nodded her head affirmatively. Officer Blanton brought Ratigan the car keys found in the bedroom. When asked if the keys belonged to her, the appellant answered affirmatively. The keys were used to open the car and the trunk. Partially burned marijuana cigarettes were found in the car. The officers found a rolled-up towel in the trunk which contained a large clear baggie which held three smaller baggies. The three baggies were filed with pink baggies containing cocaine. There was testimony that these small baggies are very prevalent in the cocaine business. The total amount of the cocaine was 234.795 grams.
We find that the record clearly demonstrates that the evidence was sufficient to connect this appellant with the drugs at issue and establish her knowledge of the presence of the drugs. "When the presence of the accused at the scene is established and evidence of his knowledge of the presence of the illegal substance is shown — even by circumstantial evidence — along with any other incriminating evidence, the issue of the appellant's guilt should be submitted to the jury." Moore, at 986. The motion for judgment of acquittal was properly denied.
 V
The appellant next contends that the trial court erred in failing to suppress the fruits of the search of the appellant's vehicle because the appellant did not voluntarily consent to the search. Although it is clear from the record that the appellant freely and voluntarily consented to the search, we need not specifically address this argument because the record reveals that there was probable cause for the search of the vehicle without the appellant's consent.
The record reveals that the law enforcement officers had information that the appellant kept drugs in her car. A partially burned marijuana cigarette was visible from outside the vehicle. The search was not conducted until after contraband was seized from the appellant's apartment. Therefore, the officers had probable cause to search the vehicle. See Robinette; Stanfield v. State, 529 So.2d 1053
(Ala.Cr.App. 1988). Furthermore, "a vehicle may be searched on probable cause without a warrant and without a demonstration of any exigent circumstances other than its own inherent or ready mobility." Stanfield, at 1060. The trial court properly denied the appellant's motion to suppress.
 VI
The appellant next contends that the court erred in denying her motion to suppress the evidence obtained pursuant to the search warrant because the warrant was identical to the warrant executed at the appellant's apartment in July with the exception of the date, time period in which the informant saw the contraband and the affiant. The appellant argues that the use of a "form" search warrant and the subsequent denial of her motion to suppress mandate a reversal of her conviction. Although we do not encourage or support the use of "boilerplate" documents, there is no rule of law which mandates a reversal simply because the documents used by a law enforcement agency follow a similar format. As long as the affidavit contains the information required by applicable law, the form of the affidavit and/or warrant is not determinative. Furthermore, Officer Tony Richardson, who was the affiant on the July warrant, testified that, although the officers have a form they can fill in so someone can type the affidavit, "if you are just saying that we pull something out of a drawer that has this on it, no sir." (R. 16) He also testified that, prior to having the affidavit typed, he provides the secretary with the details of his own independent investigation so she will know what to include on the warrant.
The affidavit for the October search stated that the affiant had spoken with a reliable, confidential informant and that the informant had been present in the appellant's residence within the past 48 hours and observed a quantity of cocaine. The affidavit further stated that the informant had given the affiant reliable information *Page 694 
in the past and that the informant was familiar with the use, appearance and packaging of cocaine. The affidavit also stated that an independent investigation revealed that the address where the informant saw the cocaine was, in fact, the appellant's residence.
 "The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause exists."
Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332,76 L.Ed.2d 527 (1983) (citations omitted). See also Walker v.State, 462 So.2d 794 (Ala.Cr.App. 1984). Our review of the affidavit reveals that there was sufficient information placed before the trial court for it to conclude that the magistrate had a substantial basis for finding probable cause. See Bengev. State, 551 So.2d 430 (Ala.Cr.App. 1989); Shaneyfelt v.State, 494 So.2d 804 (Ala.Cr.App. 1986).
 VII
The appellant finally contends that the State violated the principles of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), because the district attorney used three of her seven peremptory strikes to remove black jurors from the jury panel. The record reveals that there were five black jurors on the 27 person venire. Two black jurors served on the jury.
The prosecutor stated that, in drug related cases the primary type of juror she was looking for was an older, married individual with children. She stated that she was primarily looking for jurors with a family background. The record indicates that the State struck all young, single people on the panel. These include a white male, a black male and a black female. The prosecutor stated that the third black juror was removed "in light of her answers to the questions about she would want to know where the drugs came from." (R. 95) The record also indicates that, of the two black jurors who served on the jury one was an older male who was married and retired and the other was a young woman who was married with children.
We find that the record sufficiently demonstrates that the State did not exercise its peremptory strikes in a racially discriminatory manner. The record indicates that the State struck a non-black juror for substantially the same reasons as two of the black jurors. Such evidence of neutrality may overcome the presumption of discrimination. Pollard v. State,549 So.2d 593 (Ala.Cr.App. 1989); Ward v. State, 539 So.2d 407
(Ala.Cr.App. 1988). The record indicates that the third black juror was also struck for a legitimate, race-neutral reason.
The trial court's findings are to be given great deference on appeal. Batson, 476 U.S. at 98, 106 S.Ct. at 1723-1724. We find that the trial court did not err in finding that the prosecutor's peremptory strikes were based on consideration other than race.
For the reasons stated above, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.