568 So.2d 421 (1990)
Keith Mitchell HARRIS
v.
STATE.
8 Div. 451.
Court of Criminal Appeals of Alabama.
May 11, 1990.
Rehearing Denied June 29, 1990.
Certiorari Denied August 31, 1990.
*422 Cecil Matthews, Guntersville, for appellant.
Don Siegelman, Atty. Gen., and Robert E. Lusk, Jr., Asst. Atty. Gen., for State.
Alabama Supreme Court 89-1531.
McMILLAN, Judge.
The appellant was convicted as a youthful offender of receiving stolen property in the second degree, in violation of § 13A-8-17, Code of Alabama (1975). He was sentenced to one year in the custody of the Commissioner of Corrections. He was ordered to serve 30 days in the Marshall County Jail and the remainder of the sentence was suspended; he was placed on probation for three years.
The appellant argues that the police officer lacked the authority to stop and question him and, therefore, that the stolen property that was found in his vehicle was the fruit of an illegal stop and should not have been allowed into evidence.
The State argues that the investigatory stop of the appellant was proper and, that because he consented to the search of his trunk, he waived his Fourth Amendment protection against unreasonable searches and seizures. Brooks v. State, 520 So.2d 195 (Ala.Cr.App. 1987). Section 15-5-30, Code of Alabama (1975), authorizes the police, without probable cause, to "stop any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or other public offense and [to] demand of him, his name, address and explanation of his actions." Thus, a person may be stopped and questioned for investigatory purposes although the circumstances fall short of the probable cause requirement. Scurlock v. State, 487 So.2d 286 (Ala.Cr.App.1986).
"`The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and to allow a crime to occur or a criminal to escape. On the contrary, Terry [v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),] recognizes that it may be the essence of good police work to adopt an intermediate response. See [Terry, 392 U.S.] at 23, 88 S.Ct. at 1881. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.' Adams v. Williams, 407 U.S. 143, 145-46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972)."
Walker v. City of Mobile, 508 So.2d 1209, 1212 (Ala.Cr.App.1987).
However, in the present case, the officer lacked a sufficient particularized basis for suspicion to justify this stop. United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).
The officer testified that he was working a double shift because of the number of reports of thefts of automobiles and burglaries in the area, which were reported to have been occurring while people slept. He testified that, as he was patrolling the area after midnight on the morning in question, he observed a vehicle which was traveling at an extremely low rate of speed *423 through the neighborhood. He stopped the vehicle across from a Bargain Town store and asked for the driver's license of the driver. He testified that his reasons for the stop were that it was the only vehicle which the officer observed travelling in the area at that time of night and its slow rate of speed. The officer testified that while he called in the driver's license to police headquarters, he identified the other two individuals in the car, and he testified that, "knowing the other two, it was likely that them being out at that time that they very well could have been [involved in criminal activity]." He further testified that, after they were stopped, the individuals in the car all appeared to be extremely nervous. While talking to the appellant, the officer asked if he could look in the trunk. He testified that he told the appellant that if he did not want the officer to look in the trunk, he would not. The appellant then voluntarily opened the trunk and allowed the officer to look inside, where he discovered the stolen amp.
The officer who stopped the appellant did not have an "`articulable suspicion that a person ha[d] committed or [was] about to commit a crime,'" Florida v. Rodriguez, 469 U.S. 1, 5, 105 S.Ct. 308, 310, 83 L.Ed.2d 165 (1984), quoting Florida v. Royer, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983), or "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. at 417, 101 S.Ct. at 695.
"Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize the police to stop a person. Terms like `articulable reasons' and `founded suspicion' are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances the whole picturemust be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. [Citations omitted.]
"The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all of the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of law breakers. From these data, a trained officer draws inferences and makes deductionsinferences and deductions that might well elude an untrained person.
"The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human behavior; jurors as factfinders are permitted to do the same and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.
"The second element contained in the idea that an assessment of the whole picture must yield a particularized suspicion is the concept that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. Chief Justice Warren, speaking for the Court in Terry v. Ohio, [392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)], said that `[t]his demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence.' Id., at 21, n. 18 [88 S.Ct. at 1880, n. 18] (emphasis added). See also Brown v. Texas, [443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979) ]; Delaware v. Prouse, [440 U.S. 648, 661-663, 99 S.Ct. 1391, 1400-01, 59 L.Ed.2d 660 (1979)]; United States v. Brignoni-Ponce, [422 U.S. 873, 884, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607 (1975)]."
*424 United States v. Cortez, 449 U.S. at 417-18, 101 S.Ct. at 695-96.
Driving slowly through a neighborhood in the early morning hours is not the type of specificity or factual basis to give rise to a particularized suspicion that this particular person is engaged in wrongdoing. Also relevant is the fact that the appellant apparently continued through the residential area, ultimately being stopped by a Bargain Town store.
"As for suspicion of burglary of residential premises, something more than presence in immediate proximity to those premises will ordinarily be required, for persons have occasion to enter and exit their residence at all hours. This is not to suggest, however, that the time of day is unimportant; conduct which might be deemed innocuous in the day time might be viewed otherwise at night. Even at night, however, something in the way of suspicious conduct should be present, such as stealthy movements, the apparent `casing' of the premises, efforts to conceal one's presence from passersby, flight from the premises, or other conduct which would not ordinarily be expected from a person who resided there, unless the suspect resembles a description given with respect to prior burglaries."
LaFave, Search and Seizure § 9.3(c) (1987). The fact that the appellant's vehicle was travelling at a slow rate of speed, without more, does not give rise to the implication that the appellant was "casing" any residences. Cf. Tillman v. State, 275 Ark. 275, 630 S.W.2d 5 (1982), cert. denied, 459 U.S. 1201, 103 S.Ct. 1185, 75 L.Ed.2d 432 (1983) (strange vehicle seen driving very slowly with driver looking at houses and vehicle then observed in position indicating it had just backed out of driveway); People v. Cobb, 690 P.2d 848 (Colo. 1984) (sufficient indication of defendant casing a residence where he knocked on the door after midnight and when the door was answered, he stated that he had the wrong address); Commonwealth v. Wren, 391 Mass. 705, 463 N.E.2d 344 (1984) (police had reasonable suspicion that van was casing a neighborhood where it drove slowly down several dead end streets). See also People v. Johnson, 64 N.Y.2d 617, 485 N.Y. S.2d 33, 474 N.E.2d 241 (1984) (fact that defendant was "looking at houses" found insufficient because "there is little else to look at in a residential neighborhood, and there is no other testimony suggesting that his behavior was furtive or his movements unusual").
Moreover, although the appellant consented to the police officer's search of his trunk, this consent was tainted by the prior illegal police action. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Because the stolen property was
"It is to be doubted that it is possible for a consent to search to be `purged of the primary taint' under Wong Sun if, taking into account the prior illegality and other relevant circumstances, the consent was not voluntary. This is because the primary taint remained so long as the prior illegality is an element entering into the equation by which it is ascertained that the individual was coerced. But, while it is thus true that a consent to search which fails the voluntariness test because of prior illegality may just as convincingly be said to be a fruit of the prior illegality, the fruit of the poisonous tree doctrine also extends to invalidate consents which are voluntary."
LaFave, Search and Seizure § 8.2(d) (1987). (Emphasis in original.) See also United States v. Taheri, 648 F.2d 598 (9th Cir.1981) (even if a defendant voluntarily consents, the evidence must be suppressed if it was not sufficiently attenuated from the prior misconduct).
Thus, although the appellant voluntarily consented to the search of his trunk which resulted in the police officer's discovery of the stolen property, because the consent was governed by the fruit of the poisonous tree doctrine, it was invalid. The officer's improper stop of the appellant invalidated his consent to search and, therefore, the stolen property should not have been allowed into evidence.
REVERSED AND REMANDED.
*425 All Judges concur except BOWEN, J., dissenting with opinion.
BOWEN, Judge, dissenting.
I dissent from the majority opinion concluding that the stop of the defendant's vehicle was unjustified. In my opinion, Albertville Police Officer Andy Whitten had reasonable suspicion to stop the car.
On the night of June 21, 1988, Officer Whitten was working overtime due to the number of reports of burglaries and thefts from automobiles in the neighborhood. Sometime after midnight, he stopped the defendant's vehicle because it was the only vehicle in the neighborhood and because it was moving "real slow." In my opinion these factsthe recent commission of a number of thefts and burglaries in the neighborhood, the unusual time, and the unusual and suspicious manner in which the vehicle was travelingsupply the reasonable suspicion necessary to justify the officer's actions. See Walker v. City of Mobile, 508 So.2d 1209, 1211-12 (Ala.Cr. App. 1987) (officer was justified in stopping defendant for questioning when he observed defendant standing outside a house, looking at it, shortly after midnight after officer had received two prowler calls from the area); Richardson v. City of Trussville, 492 So.2d 625, 627-28 (Ala.Cr.App. 1985) (observance of defendant's car in dentist's office parking lot at early hour of morning and fact that officers had been called to burglaries at dentist's office several times in recent months justified warrantless investigatory stop); Schultz v. State, 437 So.2d 670, 672 (Ala.Cr.App.1983) (complaints of night hunting in area, combined with deputy's observation of car moving slowly through fields with its headlights on, gave rise to more than "inarticulate hunch" that something was amiss, and established objective basis for suspecting defendant of criminal activity justifying stop of vehicle), cert. denied, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 213 (1984). Admittedly, Officer Whitten only had the barest minimum of reasonable suspicion and less than that in the above cited cases. However, I find that the totality of the circumstances presented to the officer justified the stopping of the defendant's vehicle.