The Supreme Court of the United States, in the last few years, has substantially modified the law relating to searches and seizures. In determining the reasonableness of a search, judges must consider the totality of the circumstances surrounding the search and seizure, and must apply the rule of law set out in United States v. Cortez, 449 U.S. 411, 418,101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981):
 "The process does not deal with hard certainties, but with probabilities. . . . [T]he evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."
It appears to me that my colleagues have weighed the evidence here "in terms of library analysis by scholars" and have not accorded the proper weight to the testimony of "those versed in the field of law enforcement."
My colleagues cite the "furtive movement rule" as set out inSibron v. New York, 392 U.S. 40, 66-67, 88 S.Ct. 1889, 1904,20 L.Ed.2d 917 (1968), where the Court said: *Page 1350 
 "[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest. Brinegar v. United States, 338 U.S. 160
[69 S.Ct. 1302, 93 L.Ed. 1879] (1949); Husty v. United States, 282 U.S. 694 [51 S.Ct. 240, 75 L.Ed. 629] (1931); see Henry v. United States, 361 U.S. 98, 103 [80 S.Ct. 168, 171-72, 4 L.Ed.2d 134] (1959)."
They seemingly fail to apply the rule; however, instead, they accept, substantially, if not totally, the defendant's argument that he had a right to privacy in the film canister that is the subject of the search and seizure in this case. They write:
 "[The defendant] argues that the act of putting the canister behind his back was not furtive but a manifestation of an expectation of privacy in the canister, [footnote omitted] that is, a nonverbal signal to Sgt. Hurter that he did not want to answer the question concerning the canister's contents and that he did not want Sgt. Hurter to take the canister. This is a close issue, but in the circumstances of this case, we find [the defendant's] argument persuasive. Initially, it is obvious that the Fourth Amendment would be meaningless if every act asserting privacy in one's private effects were taken to indicate a mens rea justifying a finding of probable cause. The question, then, is the proper characterization of [the defendants] act.
 "The language of the Supreme Court set out above, as well as the cases from our Court of Criminal Appeals applying this language, implies that furtive movement, in the instances in which it is not simply running away, is typically some stealthy act to conceal an object from initial view by the police or by strangers or to quickly dispose of the object. The attempt by Pearson to conceal the film canister under the seat of his car is an example of such a stealthy act of concealment from initial view. Pearson, [542 So.2d 955 (Ala.Crim.App. 1989)]. See Jones v. State, 616 So.2d 949 (Ala.Crim.App. 1993); Lewis v. State, 518 So.2d 214 (Ala.Crim.App. 1987); cf. Grubbs v. State, 602 So.2d 498 (Ala.Crim.App. 1992); Wright v. State, 601 So.2d 1095
(Ala.Crim.App. 1991); Lamar v. State, 578 So.2d 1382
(Ala.Crim.App.), cert. denied, 596 So.2d 659
(Ala. 1991); Stanfield v. State, 529 So.2d 1053
(Ala.Crim.App. 1988). This type of conduct is consistent with a mens rea. The conduct of Mr. Tucker here, however, is distinguishable; the facts do not show that Mr. Tucker fled, resisted showing the police what was in his pocket, attempted to hide or to drop the canister, or otherwise attempted to prevent the police from initially observing the object in his pocket. Both Capt. Lee and Sgt. Hurter acknowledged that when Mr. Tucker removed the object from his pocket they recognized it as a film canister."
667 So.2d 1339 at 1347-48. In its footnote 3, the majority also states:
 "The Fourth Amendment protects reasonable expectations of privacy. California v. Ciraolo, 476 U.S. 207 [106 S.Ct. 1809, 90 L.Ed.2d 210] (1986); Smith v. Maryland, 442 U.S. 735 [99 S.Ct. 2577, 61 L.Ed.2d 220] (1979). The State has not argued that [the defendant's] expectation of privacy in the film canister was unreasonable. We note that the film canister in this case could be considered a 'personal effect,' as it was in [the defendant's] pocket and was a closed opaque container designed to contain film, a potentially personal item, and could be used to contain other small potentially personal items, such as medication, coins, or keys."
667 So.2d at 1347. In making this determination, my colleagues apply a "hyper-technical" examination of the facts, and deal in "possibilities" rather than "probabilities," and, unfortunately, they do exactly what the Supreme Court of the United States, in Cortez, supra, said should not be done. That is, they have dissected the evidence and have technically inspected it, but they have given little weight to the testimony of the police officers, who are charged with the enforcement of the State's drug laws, to the effect that film canisters are commonly associated with the possession and use of drugs and that the defendant, when he was confronted by the officers, made a furtive movement that *Page 1351 
suggested to them the concealment of contraband.
It appears to me that my colleagues have erred in two ways: 1) they have misapplied the law of "furtive movement," as set out by the Supreme Court in Sibron and in several Alabama cases;[4] and 2) they have applied a "library analysis" in determining the defendant's *Page 1352 
right to privacy in the film canister — the law enforcement officers testified that film canisters are commonly used as containers for illegal drugs, and they have been the subject of searches dealt with in federal and state cases.[5] In fact, the fact that a person does not make a furtive motion can support that person's claim of a right to privacy.[6]
I believe that under the "furtive movement" test, applied to the facts of this case, the search and seizure of the film canister were reasonable, and I pose some questions to prove the point. Was the defendant's action deliberate? Obviously, it was. Was it furtive? Obviously, it was, "as understood by those versed in the field of law enforcement." At the time, was he being confronted by a police officer? Yes. Did the furtive action suggest the concealment of contraband? Obviously. This Court, the Court of Criminal Appeals, and federal courts have considered many cases involving the search of film canisters for contraband.
Viewing the totality of the circumstances, and weighing the evidence, "not in terms of *Page 1353 
library analysis by scholars, but as understood by those versed in the field of law enforcement," Cortez, supra,449 U.S. at 418, 101 S.Ct. at 695. I believe that the officers were justified here in stopping the persons congregated in front of a shot house in a high crime area for questioning,[7] that they were justified in asking the defendant to allow them to see what he had in his pocket, and that they were justified in searching the film canister when the defendant put the film canister behind his back. In short, I believe that the search was reasonable, and I believe that this Court, the Court of Criminal Appeals, and the Supreme Court of the United States have construed the provisions of the Fourth Amendment to the Constitution of the United States as I do. Consequently, I must respectfully disagree with the holding by my colleagues that "[t]he marijuana found in the film canister and in Mr. Tucker's automobile was the product of a warrantless search and seizure that were not within any of the exceptions to the warrant requirement." 667 So.2d at 1349.
INGRAM, J., concurs.
[4] I cite a few cases and excerpts from those opinions to show that the majority errs.
In Ellis v. State, 428 So.2d 142, 145 (Ala.Crim.App. 1982), the court said:
 "The furtive movements of appellant in discarding the box as well as his walking toward his truck thereafter are also legitimate circumstances to consider in determining whether probable cause existed. See Shipman v. State, 291 Ala. 484, 282 So.2d 700 (1973); see generally United States v. Mendenhall, [446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497
(1980)]."
(Emphasis added.) In Vogel v. State, 426 So.2d 863, 875
(Ala.Crim.App. 1980), the court held:
 "It is recognized that 'deliberately furtive actions * * * at the approach of strangers or law officers are strong indicia of mens rea,' Sibron v. New York, [392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)], and in this regard we note the actions of appellants, notably Robert Vogel, in 'hurriedly' slamming the trunk lid shut, remaining at or near the trunk, and resisting all efforts to open it, sometimes violently. While the mere fact of closing the trunk alone is capable of many innocent connotations, when seen in the light of the accompanying actions, a high degree of suspicion attaches. Cf., Daniels v. State, [290 Ala. 316, 276 So.2d 441
(1973)] [passenger of stopped car tossed box onto back ledge at approach of police], and cases therein cited; People v. Superior Court of Yolo County, 3 Cal.3d 807, 91 Cal.Rptr. 729, 478 P.2d 449 (1970) [mere gesture toward seat or floor not sufficient in itself], and cases therein cited; Annot., 45 A.L.R.3d 581 (1972)."
(Emphasis added.)
In Dixon v. State, 588 So.2d 903 (Ala. 1991), this Court wrote:
 "The fact that an area is known for crime can serve to create a reasonable suspicion. See Lewis v. State, 518 So.2d 214, 217 (Ala.Cr.App. 1987). Dixon's deliberately furtive actions and flight at the approach of a police officer 'are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of the crime, they are proper factors to be considered in the decision to make an arrest.' Molina v. State, 533 So.2d 701, 707 (Ala.Cr.App. 1988), quoting Sibron v. New York, 392 U.S. 40, 66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968). Also, evasive answers to police questions have been held to be a factor in establishing probable cause. See Childress v. State, 455 So.2d 175 (Ala.Cr.App. 1984). Dixon's reply to Echols's question 'What are you doing?' was that he was 'just standing there.' Certainly, this evasive answer, when coupled with the fact that Dixon was located at the rear of a residence and was looking around, is a factor tending to establish probable cause."
588 So.2d at 906-07. See also Watts v. State, 651 So.2d 1105
(Ala.Crim.App. 1994).
In Molina v. State, 533 So.2d 701, 707 (Ala.Crim.App. 1988), the Court said:
 "We conclude that the police were justified in stopping the Corvette on the reasonable suspicion of criminal activity. That suspicion ripened into probable cause when the police observed evasive action and furtive gestures on the part of the Corvette's occupants. 'Although the initial stop of the suspect may have been justified only by reasonable suspicion, additional facts gathered from that stop may strengthen that suspicion into probable cause.' United States v. Martinez, 808 F.2d 1050, 1055 (5th Cir.), cert. denied, 481 U.S. 1032, 107 S.Ct. 1962, 95 L.Ed.2d 533 (1987). See Stanfield v. State, 529 So.2d 1053 (Ala.Cr.App. 1988). See also State v. Booth, 202 Neb. 692, 276 N.W.2d 673, cert. denied, Booth v. Nebraska, 444 U.S. 982, 100 S.Ct. 485, 62 L.Ed.2d 409 (1973 [1979]) (tip from citizen plus furtive gestures by suspect amounted to probable cause).
 " '[T]he "furtive gesture rule" . . . had its genesis in Terry and was expanded upon in Sibron [v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)], which provides that a furtive gesture when coupled with prior reliable information may constitute probable cause for search or arrest.' State v. Booth, 202 Neb. at 698, 276 N.W.2d at 676
(citations omitted).
 " '[D]eliberately furtive actions and flight at the approach of strangers or law-officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest.' [Sibron] v. New York, 392 U.S. 40, 66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968)."
(Emphasis added.) In Stanfield v. State, 529 So.2d 1053, 1056
(Ala.Crim.App. 1988), the court said:
 "In this case, we find that the defendant's presence at the apartment being searched, when coupled with information known to the officers and the defendant's furtive movements in 'stuffing a little black pouch or a little black bag into the cushion of the chair,' provided the probable cause necessary to justify the search of the defendant's person. In determining whether the police had probable cause to search the defendant, we apply the 'totality of the circumstances' analysis of Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); Spann v. State, 494 So.2d 719 (Ala. 1986). 'We recognize that Gates dealt with probable cause for the issuance of a warrant. . . . This determination of probable cause, however, is applicable to both warrant and warrantless searches.' United States v. Mendoza, 722 F.2d 96, 100 n. 5 (5th Cir. 1983). See also Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971)."
(Emphasis added.)
In Stanfield, the Court of Criminal Appeals quoted 2 LaFave, Search and Seizure § 3.6(c):
 " 'As the Supreme Court concluded in [Sibron] v. New York
[392 U.S. 40 [82], 88 S.Ct. 1889, [1912], 20 L.Ed.2d 917
(1968)],
 "deliberately furtive actions . . . at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest." ' "
529 So.2d at 1058.
[5] See, T.W.H. v. State, 602 So.2d 481 (Ala.Crim.App. 1992);Jones v. State, 593 So.2d 155 (Ala.Crim.App. 1991); Robinettev. State, 531 So.2d 682 (Ala.Crim.App. 1987); Darby v. State,516 So.2d 775 (Ala.Crim.App. 1985), rev'd. by Ex parte Darby,516 So.2d 786 (Ala. 1987).
A Westlaw search, using the query "film /s canister /p search" located a total of 36 cases in the ALLFEDS database, several of which are published. See, e.g.:
United States v. Perrin, 45 F.3d 869 (4th Cir. 1995).
United States v. Wellman, 33 F.3d 944 (8th Cir. 1994).
United States v. Eastland, 989 F.2d 760 (5th Cir. 1993).
 United States v. Nicholson, 983 F.2d 983, 37 Fed.R.Evid.Serv. 721 (10th Cir. 1993).
 United States v. Pettit, 903 F.2d 1336, 30 Fed.R.Evid.Serv. 511 (10th Cir. 1990).
United States v. Melucci, 888 F.2d 200 (1st Cir. 1989).
United States v. Rodriguez, 869 F.2d 479 (9th Cir. 1989).
United States v. Hill, 864 F.2d 601 (8th Cir. 1988).
United States v. Nates, 831 F.2d 860 (9th Cir. 1987).
United States v. Kolodziej, 706 F.2d 590 (5th Cir. 1983).
United States v. Hilton, 619 F.2d 127 (1st Cir. 1980).
United States v. Rettig, 589 F.2d 418 (9th Cir. 1978).
 United States v. Thompson, 1992 WL 118302 (D.D.C. May 22, 1992) (NO. CRIM.A. 92-026-01(RCL)).
United States v. Gilmer, 793 F. Supp. 1545 (D.Colo. 1992).
United States v. Tracy, 758 F. Supp. 816 (D.Conn. 1991).
 United States v. $46,559.00 in U.S. Currency, 758 F. Supp. 613
(D.Or. 1990).
 United States v. Pettit, 1989 WL 19415 (D.Kan. Feb. 21, 1989) (NO. 88-20117-01).
United States v. Hill, 666 F. Supp. 174 (D.N.D. 1987).
Morale v. Grigel, 422 F. Supp. 988 (D.N.H. 1976).
United States v. Cohen, 358 F. Supp. 112 (S.D.N.Y. 1973).
United States v. Wilson, 7 M.J. 290 (C.M.A. 1979).
United States v. Britting, 7 M.J. 978 (A.F.C.M.R. 1979).
United States v. Holsworth, 7 M.J. 184 (C.M.A. 1979).
[6] In Harris v. State, 568 So.2d 421 (Ala.Crim.App. 1990), the Court of Criminal Appeals reversed a conviction, concluding that the police had lacked sufficient reason to stop the defendant's motor vehicle. The court cited People v. Johnson,64 N.Y.2d 617, 485 N.Y.S.2d 33, 474 N.E.2d 241 (1984), as standing for the proposition that the "fact that defendant was 'looking at houses' [was an insufficient basis for a stop] because 'there is little else to look at in a residential neighborhood, and there is no other testimony suggesting that his behavior was furtive or his movements unusual.' " 568 So.2d at 424 (Emphasis added.) Harris suggests that if there had been testimony that the defendant's behavior was "furtive" then the majority would have upheld the investigatory stop. Judge Bowen dissented from the reversal, expressing his view that the police officer had "reasonable suspicion to stop [Harris's] car." 568 So.2d at 425.
[7] See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968).